74 So.2d 74 (1954)
McCOLLUM
v.
STATE.
Supreme Court of Florida. En Banc.
July 20, 1954.
*75 Frank T. Cannon, Releford McGriff, P. Guy Crews, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., Reeves Bowen, Asst. Atty. Gen., Wm. Randall Slaughter, State Atty., Live Oak, O.O. Edwards, Asst. State Atty., Cross City, for appellee.
SEBRING, Justice.
Ruby McCollum was indicted for the murder of Dr. Leroy Adams. She was tried and found guilty and the death penalty was imposed. She has appealed from the judgment and sentence.
According to the record Ruby McCollum went to the office of Dr. Adams, on a Sunday morning, for medical treatment. While there she had some discussion with Dr. Adams about a medical bill that had been mailed to her husband. Witnesses for the prosecution, who claimed to be eyewitnesses, testified that after an exchange of words about payment of the bill the defendant shot the doctor in the back as he walked away from her in the treating room with the parting words, "Woman, I'm tired of fooling with you." The defendant admitted having the discussion with the doctor but testified that she shot in necessary self-defense after the doctor became angry and attacked her.
The first ground urged by the defendant for the reversal of the judgment and sentence is that during the progress of the trial the trial judge ordered a view of the premises where the homicide occurred and that the view was had out of the presence of the trial judge and defendant.
In respect to this ground it is shown by the record that after the prosecution had rested its case in chief, counsel for the defendant made a motion that the court order the jury to view the premises where the shooting took place, and that the state attorney made a similar motion. The motions were granted, and after the trial judge had properly admonished the officer in charge of the jury in respect to his duties at the view, section 918.05, Florida Statutes 1951, F.S.A., the jury, in proper custody of the sheriff, left the courtroom to view the scene. It is apparent from the record that the defendant did not accompany the jury, but, during the 25-minute period that the jury was absent for the view, stayed in the courtroom with her counsel. It is also apparent from the record that the trial judge was not with the jury during all the time they were present at the scene but, if present at all, was present only during the latter part of the view.
After the jury had returned from the scene, a recess of the trial was taken until the following morning, at which time the following transpired:
"The Court: Gentlemen of the Jury: I am advised that on yesterday on the occasion of the view  I was not over there all the time  I went over there during the latter part of it  that the defendant was not over there with you. So you will go back, you are going to be sent back for a further view, and the defendant will go with you. Is Mr. Jernigan in the courtroom?
"Mr. Jernigan: Yes, sir.
"The Court: You will arrange to let them go in. All right, gentlemen, proceed over there and take another view of the premises and let the defendant go along with them. You are under the same instructions as you were yesterday.

*76 "[State Attorney]: Is there any objection to counsel going along?
"The Court: Not a bit; all of you can go. (Whereupon, the jury left the courtroom accompanied by the sheriff and two bailiffs, and also accompanied by the defendant, Ruby McCollum, to view the premises again, and thereafter returned to the courtroom.)"
Parenthetically, it will be noted that the record fails to reflect that the trial judge was present at the second view.
No objections were made by the defendant to either view of the premises until after the verdict had been returned against the defendant. The first time objections were registered to the fact that the defendant, and the trial judge, were absent from either view, was in the motion for new trial filed by the defendant.
The issue is whether under the circumstances narrated the trial court committed error necessitating a new trial.
Section 914.01, Florida Statutes 1951, F.S.A., provides that in all prosecutions for felony the defendant shall be present at arraignment; when a plea is made; at the calling, examination, challenging, impaneling and swearing of the jury; at all proceedings before the court when the jury is present; when evidence is addressed to the court out of the presence of the jury for the purpose of laying the foundation for the introduction of evidence before the jury; at the rendition of the verdict; and at a view by the jury.
It is provided by section 918.05, Florida Statutes 1951, F.S.A., that the trial court may order the jury to view the place where an offense appears to have been committed, and that at such view the trial judge shall be present, and that the defendant shall be present also, unless the defendant "absents himself without permission of court."
Before the enactment of the preceding statutes, the nature of the view in this jurisdiction was clearly defined. As is stated in Washington v. State, 86 Fla. 533, 98 So. 605, 607: "The primary purpose of a view by the jury is to assist them to analyze and apply the evidence taken at the trial. * * * Under the law in this state no evidence can be taken at the view and no proceeding can be had that would in any manner be harmful to a defendant." See also O'Berry v. State, 47 Fla. 75, 36 So. 440. Although a different rule was acknowledged to be applicable in those jurisdictions which hold that at the view the jury is receiving evidence, this Court, in Washington v. State, supra, after determining that under Florida law the view is not a part of the trial, concluded that "there is therefore no ground, either upon legal principle or upon practical fairness, for holding the presence of the accused himself to be essential."
It must be noted, however, that in Haynes v. State, 71 Fla. 585, 72 So. 180, 183, cited as authority for Washington v. State, supra, this Court's conclusion that a defendant's presence was not indispensable at a view, because the view did not constitute a part of the trial proper at which evidence might be received, was expressly predicated on the general nature of the Florida statute in effect at that time, which provided merely that "`the court may order a view by the jury.'" Section 3989, General Statutes 1906. (Emphasis supplied.) "In the absence of legislative provisions describing the mode in which jury views are to be conducted, it is more in consonance with the theory and methods of judicial trials that the jury should base their findings solely upon sworn testimony in open court, or by depositions taken as provided by law." Haynes v. State, supra.
It seems clear that the amended statute, section 918.05, Florida Statutes 1951, F.S.A., does not alter the rule that the view is not a part of the trial proper for the reception of evidence, since it expressly requires the trial judge to admonish the officer conducting the jury "to permit no person to speak to or otherwise communicate with the jury, nor to do so himself, on any subject connected with the trial * * *." However, the statute does contain a clear and explicit legislative mandate that when a view is taken "the trial judge and defendant shall be present unless defendant *77 absents himself without permission of court * * *." (Emphasis supplied.) Since the latter clause of the amended statute qualifies the requirement as to the presence of the defendant at the view, it may be (although we do not here decide) that the statute does not vitiate the doctrine approved in Haynes v. State, supra, "that whatever the nature of the rights of the defendant [to be present at a view] may be in such case, and from whatever source such rights may be derived, he may and does waive the same when the action of the court is taken and the view made on his request and without suggestion that he desires to be present at the view; and that in such case it is too late to complain after verdict." See annotations 30 A.L.R. 1365, 90 A.L.R. 599. Underhill on Criminal Evidence, 4th ed., section 410; Bishop's New Crim.Proc., Vol. 2, section 965(3); 14 Am.Jur., Crim.Law, sections 201-202.
But over and above the question of whether or not the defendant may waive his own presence at a view, there is the larger question directly presented in the ground of appeal as to whether or not the defendant, being absent on the occasion of the view, can be held to have waived the presence of the trial judge when, as we glean from the record, the latter voluntarily absented himself from the view in the face of a statute which required his presence there.
On this question, it is held by many courts that the doctrine of waiver by failure to make timely objection cannot be applied to the absence of the judge from any stage of a criminal proceeding when under the law he is required to be present. Moore v. State, 46 Ohio App. 433, 188 N.E. 881; Tunnell v. State, 24 Okla. Cr. 176, 216 P. 951; Ellerbe v. State, 75 Miss. 522, 22 So. 950, 41 L.R.A. 569; Meredith v. People, 84 Ill. 479; Thompson v. People, 144 Ill. 378, 32 N.E. 968; People v. Shaw, Ct.App., 63 N.Y. 36; Palin v. State, 38 Neb. 862, 57 N.W. 743; State v. Carnagy, 106 Iowa 483, 76 N.W. 805; 23 C.J.S., Criminal Law, § 972, p. 302. So, failure to object to the judge's leaving the courtroom during argument to the jury has been said not to be a waiver of the accused's rights to raise and take advantage of the mistrial caused thereby. State v. Darrow, 56 N.D. 334, 217 N.W. 519.
The reason that the doctrine should not be applied in case of absence of the judge is plain: "The presiding judge of a trial court is charged with the duty of trying the case from the opening to the close, and he ought not to abdicate his functions even for half an hour. During such absence grave errors or abuses of privilege may occur, and this court may be left to the conflicting affidavits of overzealous attorneys or parties in interest to determine what in fact took place. * * * It avails not to say that error must be affirmatively shown. This is true, but, where the trial court has disabled itself from informing us as to what occurred, how is error to be shown save by affidavit? * * * We feel that we should be doing wrong to sanction any such practice. Such a rule, once established, would open the way to dangerous abuses, and break down one of the most valuable safeguards to litigants. Thomp. Trials, § 955". Smith v. Sherwood, 95 Wis. 558, 70 N.W. 682, 683.
While it cannot be denied that there are a few decisions which arrive at a contrary conclusion, these, for the most part, are based on the presence of very exceptional circumstances, as, for example, that the absence is a momentary one during argument of defendant's own counsel to the jury, Heflin v. U.S., 5 Cir., 125 F.2d 700; or, as appears to be the reason for the ruling in a Georgia case, that the court deciding the question felt bound, because of the holdings of its earlier decisions, to rule that the defendant had waived his right to have the judge present at a particular time; the court stating, in the particular case, that "if it were an open question, we would hold that the presence of the judge at all stages of the trial is absolutely necessary to its validity, and that the absence of the judge from the trial without suspending the same, for any length of time, no matter how short, or for any purpose, however urgent, would vitiate the whole proceeding, whether objection was made by the parties interested or not, and whether injury resulted to anyone *78 or not. * * * The great weight of authority is in harmony with this view. * * * [citing cases]." Horne v. Rogers, 110 Ga. 362, 35 S.E. 715, 718, 49 L.R.A. 176.
In only two criminal cases have we found a ruling that the right to have the judge present upon the occasion of a view was a right that could be waived by the defendant. In People v. White, 5 Cal. App. 329, 90 P. 471, 477, a case involving a robbery charge, the absence of the judge was said to be an irregularity which "should be objected to at the time, and consent of defendant or his failure to object in time will defeat his right to complain. * * * This same test has been extended to an absence of the judge from the courtroom, without suspending the trial, during the examination of a witness for the prosecution (Hayes v. State, 58 Ga. 35), and during the argument of the case. (O'Shields v. State, 6 S.E. 426, 81 Ga. 301; Pritchett v. State, 18 S.E. 536, 92 Ga. 65). * * * we see no reason why the rule above declared should not be applied to the error committed."
In State v. McClurg, 50 Idaho 762, 300 P. 898, the doctrine of waiver by failure to make timely objection was applied in a murder case in which the trial judge absented himself from the view, the Idaho court resting its decision upon earlier decisions of that court. State v. Reed, 3 Idaho 754, 35 P. 706 (pointing out the lack of any specific statutory requirement of presence at the view).
It is important to note, in connection with these two decisions, that the California court, in concluding that the presence of the judge at the view had been waived by failure of the defendant to make timely objections, placed considerable reliance on the holding in Horne v. Rogers, supra, an early Georgia case, to support its conclusion on the point; and that the doctrine of Horne v. Rogers has been virtually abondoned by the Georgia court in its later decisions. See Moore v. State, 29 Ga. App. 274, 115 S.E. 25. It is important to note, also, that in neither California nor in Idaho is there a specific statutory requirement that the trial judge shall be present at the view, such as has been made a part of our criminal code. Section 918.05, Florida Statutes 1951, F.S.A.
We conclude, then, from our consideration of the authorities bearing on the issue, that the question whether a defendant, in a capital case, can waive the presence of the trial judge at a view by failing to make seasonable objections must be controlled by the general rule that the voluntary absence of the trial judge at a step in the proceedings when his presence is required by law will constitute reversible error. And while the doctrine of implied waiver can be said to have considerable force when applied to the failure of the defendant himself to exercise his right to be present at a view, it is impossible to conclude that an accused in a capital case has the same obligation to ascertain the whereabouts of the trial judge and demand of him that he perform the duty mandatorily imposed by statute, at the peril, on the one hand, of losing a right established by the legislature for his protection, or on the other hand, of having cast upon him the virtually impossible burden of showing what took place at a view when neither he nor the trial judge was present.
The fact that in this jurisdiction the view is not strictly a part on the trial proceeding proper (inasmuch as no evidence can be received at the view) cannot change our conclusion in the matter. The law has been established by the legislature that the defendant is of right entitled to have the trial judge present at the view. This is a right that cannot be frittered away by the act of a trial judge in voluntarily absenting himself from the proceeding. The right of a defendant on trial for his life to be accorded the protection that flows from the presence of the trial judge at the view is of vastly greater importance than any transient inconvenience that the performance of this duty may impose upon the judge in charge of the trial proceeding.
It follows from the conclusions reached that the judgment and sentence appealed from must be reversed and set aside and that a new trial must be awarded on the ground assigned.
*79 A second assignment of error on the appeal is that the defendant was denied her right to a fair and impartial trial by the refusal of the trial court to order a change of venue.
As the record reveals, the motion for change of venue filed on behalf of the defendant was supported only by her own affidavit and had attached thereto the certificate of her counsel "that he has investigated the prospects of procuring supporting affidavits and it is impractical, and he believes impossible because of the hostile public sentiment existing in Suwannee County, Florida, against his client." (Emphasis supplied.) A traverse to the motion was filed by the prosecution, to which there were attached the affidavits of 37 citizens of Suwannee County, to the effect that the defendant could and would receive a fair trial in the county. When the motion and traverse came on for hearing the defendant failed to offer any affidavits or evidence in support of her motion. Accordingly, the trial court entered an order denying the change of venue.
It is plain that the defendant failed to conform with the requirements of law with reference to such motions, and the order of the court was accordingly proper, because of the absence of any supporting affidavit and the fact that the allegation in her counsel's certificate, with reference to the impossibility of obtaining affidavits because of hostile public sentiment, was itself made as a matter of belief and was never supported by oath or affidavit. Section 911.03, Florida Statutes 1951, F.S.A., Squires v. State, 42 Fla. 251, 27 So. 864; Roberson v. State, 42 Fla. 212, 28 So. 427; Robertson v. State, 64 Fla. 437, 60 So. 118.
But the court did not stop with the mere denial of the defendant's motion for change of venue. After entering the order of denial, the court selected from the jury box a venire of 150 citizens and residents of the county, of which 130 were served and appeared for duty. After being sworn on their voir dire these 130 veniremen, without objection from counsel, were questioned at great length by the court, and the court, of its own motion, excused not only all who appeared to be legally disqualified but also all who might be thought to have had even a remote interest in the outcome of the case. After these veniremen had been excused by the court, there remained 62 prospective jurors in the box. The trial court allowed these veniremen to be examined by the state and by the defendant. After the defendant has exercised 6 of the 10 peremptory challenges allowed by law in a capital case, section 913.08, Florida Statutes 1951, F.S.A., the defendant renewed the motion for change of venue on the ground that of the few remaining veniremen in the box it appeared that 6 of them, at isolated times, had been patients of the decedent, Dr. Adams, and that if the defendant were required to accept them, because of the exhaustion of her remaining 4 peremptory challenges, she would be compelled to go to trial before a jury "half of whom are composed of people who have either used the doctor as their personal physician or have had the doctor attend * * * the juror's wife."
The trial court denied the motion of the defendant, whereupon the defendant moved that the 6 prospective jurors be excused for cause, which motion was denied. Thereafter, the defendant exercised one more peremptory challenge and then accepted the jury.
From a consideration of these proceedings, we have the opinion that there is no merit to the contention that the defendant was improperly denied a change of venue, nor is there any substance to the subsidiary contention, that the court committed reversible error in refusing to discharge for cause the six veniremen who had had casual physician and patient relationship with the decedent over a course of years. Such a showing, just as in the case of other personal or professional contacts, "does not, ipso facto, disqualify [a person] to serve as a juror in all cases where the * * * [professional party] is interested, or is the injured party in a criminal prosecution." *80 Elliott v. State, 77 Fla. 611, 82 So. 139, 141. It would appear that the court in the present case fully complied with the rule stated in the opinion in the latter case, that "In each case the bias of the juror should be carefully inquired into on the examination on his voir dire, and the trial judge should allow a challenge for cause, if it seems that his connection * * * might cause him to lean towards or against one of the parties * * *. As it does not appear from the record that these jurors were biased or prejudiced, or that the circumstances of this case were such as to evince good reason for interest or bias, we find no reversible error in the ruling of the court on refusing the defendants challenge of these jurors for cause." See also Kilgore v. State, 69 Fla. 397, 68 So. 378.
The defendant urges as a ground of reversal that she was denied adequate counsel of her own choosing to represent her at the trial; but inasmuch as certain events which operated to deprive the defendant of original counsel selected by her are not likely to occur in the course of the new trial herein ordered, this ground need not be considered.
Other grounds urged by the defendant for the reversal of the judgment and sentence arise out of rulings in regard to certain testimony excluded by the trial court on objection of the prosecution. Manifestly, no useful purpose can be served by a ruling of this Court in respect to the many and varied questions that were ruled on by the trial court adversely to the defendant, because it cannot be said with the slightest degree of certainty that these questions will appear in the new trial under identical circumstances or that if questions are asked the same rulings will be made as were made at the former proceeding. Therefore, we do not consider the grounds of appeal raising the question of the propriety of the rulings in respect to the rejected evidence.
The judgment and sentence appealed from must be reversed, and a new trial had, for the reasons herein stated.
It is so ordered.
ROBERTS, C.J., and TERRELL, THOMAS, HOBSON, MATHEWS, and DREW, JJ., concur.