538 So.2d 833 (1989)
James Richard BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 70230.
Supreme Court of Florida.
February 2, 1989.
James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
*834 McDONALD, Justice.
James Richard Brown appeals his conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Because of the trial judge's absence during part of the trial, we reverse the conviction and sentence of death and remand for a new trial.
The facts of this case are confused and confusing.[1] The evening of September 8, 1986 Brian Merrick walked about two miles to a convenience store to purchase some beer, but decided to hitchhike home. Brown picked up Merrick and drove to Merrick's house. During the ride, Merrick asked Brown whether he had any marijuana. After letting Merrick out of the car, Brown realized he had some marijuana at his house, got Merrick's attention, and told him that he did have some marijuana. The two men proceeded to Brown's house and, after smoking some of the marijuana, decided to take the rest back to Merrick's house to share with his family.
Back at Merrick's house, Merrick introduced Brown to John Baxter (his father-in-law), Barbara (his wife), and Raymond Stacey (his stepson). Apparently, everyone but Barbara smoked the marijuana. Brown and Baxter talked about real estate because the Merricks had to leave their rented house and were interested in Brown's house. Merrick also asked Brown whether he could get more marijuana, but Brown's telephone calls to procure more drugs were unsuccessful. When Merrick later asked Brown to make more calls, Brown asked Merrick and his family whether they were police. Shortly afterward, according to Merrick, Brown unexpectedly brought out a handgun and fired at Raymond Stacey, missing him. According to Brown, Stacey returned Brown's fire. Brown shot six more times, hitting Merrick in the chin, Stacey in the back, and Baxter in the head. Out of ammunition, Brown ran to his house, where the police picked him up the following morning. He was later charged with the first-degree murder of John Baxter, tried, convicted, and sentenced to death on the jury's recommendation.
During their deliberations, the jurors requested transcripts of certain witnesses' testimony. The trial judge had left the courthouse, however, and the bailiff and counsel for both parties contacted him by telephone to advise him of the jury's request. Although the judge offered to return to the courthouse, both counsel agreed that would not be necessary. Counsel and the judge agreed that the jurors should be told that they could not have the transcripts and that they would have to rely on their memories. Brown now claims that the procedure used in this case involved at least five instances of reversible error.
Florida Rule of Criminal Procedure 3.410 provides that, when jurors request additional instructions or the rereading of testimony after retiring for deliberations, they will be taken back to the courtroom, and the court may, in its discretion, comply with the request. Such proceeding can only be conducted after notice to both the prosecutor and the defense. This Court has held that violations of rule 3.410 are per se reversible because communication between the judge and the jury, without notice to and outside the presence of the prosecutor, defense counsel, and the defendant, is too possibly prejudicial to be tolerated. Bradley v. State, 513 So.2d 112 (Fla. 1987); Williams v. State, 488 So.2d 62 (Fla. 1986); Curtis v. State, 480 So.2d 1277 (Fla. 1985); Ivory v. State, 351 So.2d 26 (Fla. 1977). We find no violation of rule 3.410 here because the judge did not communicate with the jury without notice to and outside the presence of the prosecution and the defense.
We do find, however, that the communication with the jury during the judge's absence constituted reversible error.[2] Article I, section 16 of the Florida *835 Constitution and the federal constitution's sixth amendment guarantee criminal defendants trial by an impartial jury. The presence of a judge, who will insure the proper conduct of a trial, is essential to this guarantee. In McCollum v. State, 74 So.2d 74 (Fla. 1954), this Court reversed a murder conviction because the judge did not accompany the jury when it viewed the crime scene. The Court held that a judge's voluntary absence from a part of the "proceedings when his presence is required by law will constitute reversible error" because a defendant's failure to object to the judge's absence will not constitute a waiver. Id. at 78. In reversing a conviction due to the judge's absence during voir dire the court in Peri v. State, 426 So.2d 1021, 1025 (Fla. 3d DCA), review denied, 436 So.2d 100 (Fla. 1983), echoed McCollum and stated that "the presence of the judge is as essential to, and as much a critical part of, the voir dire of prospective jurors as it is of any other stage of the trial." The court went on to hold "that it was error for the trial judge to have compelled the defendant, over objection, to continue the voir dire process in the judge's absence." Id.
Depending on the facts and circumstances of the case, sometimes valid waivers of the judge's presence may be found. In Roberts v. State, 510 So.2d 885 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1123, 99 L.Ed.2d 284 (1988), this Court recognized McCollum's refusal to imply a waiver if the defendant fails to make a timely objection but went on to hold that Roberts validly waived the judge's presence at a jury view. We found an express waiver because defense counsel, in Roberts' presence and after consulting with him, specifically waived the trial judge's presence in open court. The court assumed that the judge's presence at voir dire could be waived in Carter v. State, 512 So.2d 284 (Fla. 3d DCA 1987), but stated: "It is axiomatic that the waiver of a fundamental right must be knowingly and intelligently made." Id. at 285-86. The prosecution and Carter's counsel stipulated that the judge could be absent from voir dire, but the district court reversed because "the record before us fails, in any manner, to clearly establish that defendant knowingly and intelligently waived his right to the trial judge's presence during voir dire." Id. at 286 (emphasis supplied).
Thus, Florida case law instructs that a waiver of the trial judge's presence cannot be implied because of a defendant's failure to make a timely objection, McCollum, and a judge cannot absent himself or herself from the proceedings over a defendant's objection. Peri. Under certain limited circumstances Florida courts have held that a defendant can, if done knowingly, intelligently, and voluntarily, waive the judge's presence, at least in regards to the judge's presence at a jury view and during voir dire. Roberts; Carter; Peri.
In reaching its conclusion that the trial judge's presence may be waived, 426 So.2d at 1026, the Peri court surveyed numerous cases condemning a judge's absence from any part of a trial because such absence destroys the existence of the tribunal, thereby creating an irreparable jurisdictional defect. 426 So.2d at 1024.[3] The court recognized, however, that later cases, such as Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938),[4] have taken a less restrictive view of jurisdiction and have held that even fundamental constitutional rights can be waived.[5] Notwithstanding these pronouncements, the presence of a judge during trial is a fundamental right which can be waived only in limited circumstances and then only by a fully informed and advised defendant, and not by counsel acting alone.
*836 Brown now argues that no valid waiver occurred in this case because defense counsel consulted only with the prosecution, not with him and that Brown, himself, did not consent to the trial judge's absence. We agree that no valid waiver has been shown here. More importantly, however, we hold that the judge's presence cannot be waived when a jury wishes to communicate with the court during its deliberations. Free discourse is essential in such a situation but is thwarted by the judge's absence. In the instant case the jurors might have requested that portions of the testimony be read back to them when informed that they could not have the transcripts. Both the prosecutor and defense counsel went into the jury room to talk with the jurors. Brown now claims that the prosecutor did most of the talking to the jurors and that he told them that he did not want any more questions. We do not know what tone of voice this might have been said in, nor do we know the prosecutor's demeanor and manner in dealing with the jury. The prosecutor's statements and conduct, indeed this whole procedure, might well have had a chilling effect on the jury's deliberations. No one can say at this point that the judge's absence did not have a detrimental effect on the jury's deliberations. The possibility of prejudice is so great in this situation that it cannot be tolerated. We hold, therefore, that communications from the jury must be received by the trial judge in person and that the absence of the judge when a communication is received and answered is reversible error.[6] We disagree with the state that Brown's failure to object precludes our consideration of the judge's absence. McCollum.
We will discuss one other point argued by Brown. A critical issue at trial was whether Brown's gun was the only one involved in the incident or whether Stacey fired a second gun. The police collected a number of bullets and bullet fragments at the scene and submitted all but two of these to a firearms expert. The expert examined them and testified that all the bullets came from the same gun. On cross-examination defense counsel brought out the fact that two of the bullets had not been submitted to the expert. On re-direct the court permitted the expert to testify that the unexamined exhibits appeared to be similar to the exhibits which he had examined. Brown asserts that admitting this evidence constituted error. We do not agree. The expert also admitted on cross-examination that his testimony regarding the unexamined bullets was only speculative. We do not find that this testimony would have misled the jury or that the court erred in admitting it.
We reverse Brown's conviction, vacate his death sentence, and remand this case for a new trial.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The trial court found this case unexplainable, with no motive, and characterized it as a drugcaused, senseless shooting.
[2] Due to our ruling on this point, we do not address the other alleged errors regarding the jury's request.
[3] Similar cases are cited in McCollum v. State, 74 So.2d 74, 77 (Fla. 1954).
[4] Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), held that the right to assistance of counsel can be waived.
[5] The Peri court went on to hold that, although waivable, a judge's absence would create per se reversible error, without the necessity of showing prejudice, if that absence occurred over the defendant's objection. Peri v. State, 426 So.2d 1021, 1027 (Fla. 3d DCA), review denied, 436 So.2d 100 (Fla. 1983).
[6] A judge is not precluded from requiring that all questions from a jury be first made in writing.