591 So.2d 651 (1991)
Roderick L. YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 90-2162.
District Court of Appeal of Florida, First District.
December 13, 1991.
Rehearing Denied January 22, 1992.
Nancy Daniels, Public Defender, Lynn A. Williams, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Charles T. Faircloth, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant, defendant below, appeals his conviction, after a jury trial, for sale of cocaine and possession of cocaine with intent to sell. We conclude that one of the two points raised by appellant has merit, and requires that we reverse and remand for a new trial.
Immediately after the jury had retired to deliberate, the trial judge told counsel that he was "going to leave the courthouse and run an errand." The trial judge also gave the following directions: "If the jury comes back with a question while I am out, I will ask the two attorneys to read the question into the record and discuss it, and if you can stipulate on an answer, write the answer on the same page and return it to the jury room. If you can't, I'll be right back to answer the question." While appellant's counsel voiced some concern regarding the directions, he did not expressly object.
After the jury had deliberated for approximately forty-five minutes, it gave a single sheet of paper bearing two handwritten questions to the bailiff. The first question asked, "When the defendant was arrested did he have the marked $20 bill and/or the other pieces of cocaine in his possession?" (there had been testimony that the confidential informant who had allegedly purchased the rock of crack cocaine from appellant had paid with a "marked" $20 bill, and that appellant had additional pieces of cocaine when the transaction occurred); and the second question asked, "Can we hear the tape of the transaction that took place on 2/12/90 with the CI?" (there had been testimony that the police had recorded the transaction between the confidential informant and appellant). Because the trial judge had not yet returned, the bailiff delivered the note to counsel.
Although there had been testimony that the confidential informant had paid for the crack cocaine rock with a "marked" $20 bill and that appellant had additional rocks of *652 cocaine when the transaction occurred, no evidence had been presented as to whether or not appellant had either the $20 bill or cocaine in his possession when he was arrested. (The jury apparently assumed that appellant had been arrested shortly after the alleged transaction occurred. Actually, appellant was arrested, pursuant to a warrant, ten days after the transaction occurred. However, the jury was unaware of this fact.) Similarly, although there had been testimony that an audio recording of the alleged transaction had been made by the police, the recording was not offered as evidence by the state.
Complying with the directions of the trial judge, counsel prepared the following written response to the questions: "Neither of these questions can be answered for you. You must rely on the evidence that was presented during the trial." Both attorneys signed the response, identifying themselves as "Assistant State Attorney" and "Assistant Public Defender," respectively. The bailiff then returned the sheet, bearing the questions and the response, to the jury. Other than the written response, neither attorney had any contact or communication with the jury during its deliberation. Because the record does not reflect when the response was delivered to the jury, it is impossible to determine how long it took the jury to reach a verdict after it had received the attorneys' response to its questions.
Appellant did not expressly object to the trial judge's instructions for the handling of any question from the jury; did not raise the issue in his motion for new trial; and did not list the issue in his statement of judicial acts to be reviewed. He argues for the first time in his initial brief that what occurred regarding the jury's questions "constitutes fundamental reversible error and deprived [him] of his right to trial by an impartial jury in contravention of Article I, Section 16 of the Florida Constitution and Amendments VI and XIV of the United States Constitution." In support of this argument, appellant cites only one case  Brown v. State, 538 So.2d 833 (Fla. 1989). In its answer brief, "[t]he [s]tate concedes that it was error for the judge to absent himself during jury deliberations, thus not being present when the jury tendered a question which was answered by the two trial counsels." The state further concedes that Brown stands for the propositions that "the absence of the judge when a communication is received and answered is reversible error," and that "[t]he judge's presence cannot be waived and an objection is not required." Despite these concessions, the state argues that reversal is not required on the facts of this case because the error was "harmless beyond a reasonable doubt."
In Brown, our Supreme Court, characterizing "the presence of a judge during trial [as] a fundamental right" (538 So.2d at 835), held "that communications from the jury must be received by the trial judge in person and that the absence of the judge when a communication is received and answered is reversible error." Id. at 836. It held, further, that failure to object at trial does not preclude review on appeal, and "that the judge's presence cannot be waived when a jury wishes to communicate with the court during its deliberations." Id.
We have found no reported decision which speaks to whether or not the type of error addressed in Brown is susceptible to a harmless error test. But see Peri v. State, 426 So.2d 1021 (Fla. 3d DCA), review denied, 436 So.2d 100 (Fla. 1983) (suggesting that absence of trial judge during voir dire and jury selection should always require automatic reversal, without regard to harm). Our reading of Brown leads us to conclude that our Supreme Court intended to establish a rule requiring automatic reversal whenever a communication received from a jury during deliberation is answered in the absence of the trial judge; and that, therefore, a harmless error analysis is inappropriate. However, the case must be reversed even if our reading of Brown is incorrect, and the harmless error rule does apply.
Under the harmless error test, which the state urges us to apply, the burden is on the state to establish "beyond *653 a reasonable doubt that the error did not affect the verdict...." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). If there is any "reasonable possibility that the error affected the verdict ..., then the error is by definition harmful." Id.
We are unable to say, on the facts presented by this appeal, "beyond a reasonable doubt that the error did not affect the verdict... ." It is simply not possible, at this point, to say with certainty that the answer to the jury's questions, which was prepared and signed by counsel for the state and appellant (rather than by the trial judge, to whom the jury had directed its questions), had no effect whatsoever on the jury's verdict. Therefore, reversal and remand for a new trial are required even if the harmless error test is applied, as the state urges.
REVERSED and REMANDED for a new trial.
ALLEN, KAHN and WEBSTER, JJ., concur.