634 So.2d 661 (1994)
Miguel A. MALDONADO, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2543.
District Court of Appeal of Florida, Fifth District.
February 18, 1994.
Rehearing Denied April 14, 1994.
*662 Andrea Black, Orlando, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Rebecca Roark Wall, Asst. Atty. Gen., Daytona Beach, for appellee.
DIAMANTIS, Judge.
Miguel Maldonado appeals his convictions and sentences imposed by the trial court after a jury found him guilty of two counts of robbery with a firearm. We conclude that one of the points on appeal raised by Maldonado has merit and, thus, we reverse and remand for a new trial.
During jury deliberations, the jury asked to hear the testimony of the three key state witnesses. The trial court then proposed to both parties' counsel that the court reporter be sent into the jury room to read the transcript. Both the prosecutor and Maldonado's attorney agreed, and both counsel agreed not to be present when the court reporter read the testimony to the jury. The trial court likewise was not present for the reading. Although Maldonado's attorney and the prosecutor agreed to this procedure, Maldonado did not because neither his attorney nor the trial court consulted him.
In Brown v. State, 538 So.2d 833 (Fla. 1989), the jurors, during deliberations, requested transcripts of certain witnesses' testimony. The trial judge, who had left the courthouse, communicated with both parties' counsel by telephone. In addition to agreeing that it would not be necessary for the judge to return, the prosecutor and Brown's attorney agreed that the jury should be told they could not have the transcripts and would have to rely on their memories. Both counsel then entered the jury room and so informed the jury.
In reversing Brown's conviction, the Florida Supreme Court characterized "the presence of a judge during trial [as] a fundamental right." Brown, 538 So.2d at 835. The court penned these words which apply to the present case:
... [T]he presence of a judge during trial is a fundamental right which can be waived only in limited circumstances and then only by a fully informed and advised defendant, and not by counsel acting alone.
Brown now argues that no valid waiver occurred in this case because defense counsel consulted only with the prosecution, not with him and that Brown, himself, did not consent to the trial judge's absence. We agree that no valid waiver has been shown here. More importantly, however, we hold that the judge's presence cannot be waived when a jury wishes to communicate with the court during its deliberations. Free discourse is essential in such a situation but is thwarted by the judge's absence.... No one can say at this point that the judge's absence did not have a detrimental effect on the jury's deliberations. The possibility of prejudice is so great in this situation that it cannot be tolerated. We hold, therefore, that communications from the jury must be received by the trial judge in person and that the absence of the judge when a communication is received and answered is reversible error. We disagree with the state that Brown's failure to object precludes our consideration of the judge's absence.
Id. at 835-36 (footnote omitted) (emphasis added).
We also have considered whether the type of error addressed in Brown is susceptible to a harmless error test. We agree with the court's conclusion in Young v. State, 591 So.2d 651 *663 (Fla. 1st DCA 1991),[1] that our supreme court in Brown "intended to establish a rule requiring automatic reversal whenever a communication received from a jury during deliberation is answered in the absence of the trial judge; and that, therefore, a harmless error analysis is inappropriate." Young, 591 So.2d at 652.
Even if we were to apply a harmless error test, we conclude that the state has not met its burden to establish "beyond a reasonable doubt that the error did not affect the verdict." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). If "there is a reasonable possibility that the error affected the verdict" or if "the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id.
In this case, we are unable to say beyond a reasonable doubt that the error did not affect the verdict. We do not know what occurred between the court reporter and the jury during the reading of the testimony in the jury deliberation room. We do not know whether part or all of the witnesses' testimony was read to the jury. We do not know whether the court reporter and the jury communicated in any other respect than the reading of the testimony. We do not know the tone of voice the court reporter used. We do not know the court reporter's demeanor and manner in dealing with the jury.[2]
We do know, however, that the trial court committed fundamental error when it absented itself from the proceedings. The litigants and the jury deserve no less than a fair, impartial, and detached magistrate to be present when a jury wishes to communicate with the court during its deliberations.
REVERSED and REMANDED for a new trial.
HARRIS, C.J., and THOMPSON, J., concur.
NOTES
[1] In Young, immediately after the jury had retired to deliberate, the trial judge told counsel that he was leaving the courthouse to run an errand. The trial judge directed counsel that, if the jury came back with a question while he was out, to "read the question into the record and discuss it" and, if possible, to "stipulate on an answer, write the answer on the same page and return it to the jury room." Young, 591 So.2d at 651. Although defense counsel had some concern regarding this procedure, he did not challenge it in the trial court. In the absence of the trial judge, the jury propounded two questions concerning the evidence. Both counsel signed a written response to the jury which, in effect, stated that the jury should rely on the evidence presented.
[2] We note that the jury later communicated to the judge that it was unable to reach a unanimous decision and that the trial court, without objection, gave the jury a "modified" 3.06 standard (Allen) charge in order to break the deadlock.