# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-0428** (Tyler County 13-F-9)

**Howard Paul S.,**[1]
**Defendant Below, Petitioner**

**FILED**

**April 8, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Howard Paul S., by counsel Jason D. Parmer, appeals the Order of the Circuit Court of Tyler County, entered on April 9, 2015, that sentenced petitioner to an effective term of four to thirty-eight years of incarceration in the custody of the West Virginia Division of Corrections, to run consecutively with an eighteen-month term of incarceration in the Northern Regional Jail. Respondent State of West Virginia, by counsel D. Luke Furbee, filed a response, to which petitioner replied. Following a jury trial in January of 2015, petitioner was convicted of burglary, two counts of retaliation against a witness, attempted second degree murder, violation of a protective order, unlawful restraint, three counts of domestic assault, and destruction of property. Petitioner's appeal centers on the trial judge's failure to attend a jury view of a damaged vehicle that belonged to the victim, which was part of the State's evidence at trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's convictions stem from a domestic dispute in October of 2012, involving petitioner, his estranged wife, and his wife's two children. At that time, petitioner was prevented from being in the home due to a domestic violence protective order that was in effect. Despite the order, petitioner broke into the residence around midnight and accosted his wife and the children. The wife and children fled the house and attempted to escape in a 1998 Ford Taurus, which was parked outside the residence. However, petitioner prevented their escape by smashing the vehicle's windshield and driver's side window with a log splitter. After rendering the vehicle inoperable, petitioner removed the keys from the ignition and took a cell phone from the son,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of the victims in this case. *See In re K.H.,* 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

preventing the son from calling for help. The victims managed to escape the vehicle, and at some point, petitioner left the scene in his pickup truck. He was later apprehended while driving in Shinnston, West Virginia.

During the trial, the State moved into evidence the 1998 Ford Taurus that was damaged in the attack. Without objection from petitioner, the State also requested that the jury view the vehicle, which was parked in an area adjacent to the courthouse. The following exchange occurred regarding the jury view:

> THE COURT: Okay. Have the deputies escort the jury downstairs to take a look at it.
>
> (Jurors taken outside by bailiff to view State's Exhibit twelve at 1:33 p.m.)
>
> THE COURT: Mr. Furbee [prosecuting attorney], do you want me to go outside?
>
> MR. FURBEE: That would probably be proper, Your Honor.
>
> THE COURT: Well, we haven't had any discussion about whether or not anything is going to be pointed out.
>
> MR. GERBER [petitioner's trial counsel]: I would object to that, Judge. There's – I would object to anyone giving any sort of testimony.
>
> THE COURT: I agree.
>
> MR. FURBEE: I just intended for them to be able to see it.
>
> THE COURT: Okay. They don't need me to see it. I've looked at enough photographs for two days.
>
> (Jury returned to open court at 1:40 p.m.)

As the above exchange indicates, the twelve jurors, the attorneys, petitioner, and a few bailiffs left the courtroom to view the vehicle. However, neither the trial judge nor the court reporter accompanied them, to which petitioner did not object. Petitioner now appeals his convictions to this Court, arguing solely that the judge's failure to attend the jury view constituted prejudicial, reversible error.

West Virginia Code § 56-6-17, provides, in relevant part, as follows:

> The jury may, in any case, at the request of either party, be taken to view the premises or place in question, or any property, matter or thing relating to the controversy between the parties, when it shall appear to the court that such view is necessary to a just decision, and in such case the judge presiding at the trial may

2

go with the jury and control the proceedings; *and in a felony case the judge and the clerk shall go with the jury* and the judge shall control the proceedings, and the accused shall likewise be taken with the jury or, if under recognizance, shall attend the view and his recognizance shall be construed to require such attendance.

(Emphasis added).

It is undisputed that the statute requires that the judge attend a jury view in a felony case, and that in the present case, he did not do so.[2] Petitioner contends that this failure warrants reversal of his multiple convictions on two main bases: First, courts in Florida and North Dakota have held that a judge's failure to attend a jury view is per se reversible error, and West Virginia should follow these states' strict application of their statutes.[3] Second, petitioner argues that if this Court does not follow the approach of Florida and North Dakota, then there should be a presumption of prejudicial error, which the State cannot rebut in the present case given the lack of a record as to what actually occurred during the jury view.

Upon our review of the record, and under the unique circumstances presented by this case, we cannot find that the judge's failure to attend the jury view warrants reversal of petitioner's convictions. First, petitioner did not object to the judge's absence from the jury view; the only objection lodged by petitioner in the context of the jury view was to the taking of testimony during the view, which did not occur. In addition, contrary to petitioner's argument, we find no reason to deviate from our traditional plain error analysis in this case because of the lack of a record of the jury view.[4] This Court's decision in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), sets forth the plain error analysis as follows:

> To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.
>
> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of

---

[2] The State concedes that the judge did not comply with West Virginia Code § 56-6-17; however, the State convincingly argues that such failure, under the facts of this case, does not require this Court to grant petitioner's requested relief.

[3] *See McCollum v. State,* 74 So.2d 74 (Fla. 1954); *State v. Rohrich,* 135 N.W.2d 175 (N.D. 1965).

[4] We note that West Virginia Code § 56-6-17, in a felony case, requires the judge and the clerk attend a jury view; the statute makes no mention of the court reporter. Given that the parties did not intend to present testimony during the view, we find no error in the fact that the court reporter did not attend.

3

a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Assuming that an error is "plain," the inquiry must proceed to its last step and a determination made as to whether it affects the substantial rights of the defendant. To affect substantial rights means the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court, and the defendant rather than the prosecutor bears the burden of persuasion with respect to prejudice.

*Id.* at Syl. Pts 7, 8, and 9.

In the present case, the failure of the judge to attend the jury view was an error, and that error was plain. West Virginia Code § 56-6-17 clearly mandates that the judge attend the view in a felony case, and he did not. However, the analysis does not end there. To establish plain error, petitioner must establish that the error was prejudicial, and it is in this last step of the analysis that petitioner's argument fails.

Petitioner argues that his trial counsel's main function during the view was to "shepherd" petitioner from the courtroom to the viewing area and back so that petitioner "did not draw negative attention from the jurors." Petitioner adds that if anything improper did occur, his counsel "would be in the undesirable position of having to blow the whistle on a member of the jury." The State counters, convincingly, that petitioner's trial counsel bore the responsibility to bring to the court's attention any instance of juror misconduct or any other possible error that may have occurred during the view. Petitioner essentially asks this Court to presume that he was prejudiced because there is no record available of the jury view for this Court to review.

As the State points out, the jury view took no longer than seven minutes during a three-day jury trial. Petitioner attended the view and was accompanied by his trial counsel. It is logical for this Court to presume that petitioner's counsel would have brought to the circuit court's attention any objections regarding what occurred during the view and placed them on the record when the trial resumed. It speaks volumes to this Court that there is no indication whatsoever in the trial record or in a post-trial motion that anything improper, unusual, or even potentially objectionable occurred during the jury view. Accordingly, petitioner cannot demonstrate that he was prejudiced by the judge's failure to attend the jury view because he failed to show that it had any effect on the outcome of his trial. *See* Syl. Pt. 9, *Miller.*

For the foregoing reasons, under the specific facts and circumstances presented by this case,[5] we affirm the Circuit Court of Tyler County's Order entered on April 9, 2015.

Affirmed.

---

[5] This Memorandum Decision should not be construed as minimizing, or affecting in any way, the mandates set forth in West Virginia Code § 56-6-17.

4

**ISSUED:  April 8, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II