DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA

**CHRISTOPHER STRACHAN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-868

[October 2, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Marni A. Bryson, Judge; L.T. Case No. 16CF000876AMB.

Antony P. Ryan, Regional Counsel and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fourth District, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his convictions for aggravated battery as a lesser included offense of attempted first degree murder, simple battery as a lesser included offense of domestic battery by strangulation, and simple battery, all allegedly committed upon his live-in girlfriend. The defendant argues the trial court erred in four respects: (1) instructing that the jury-requested audio playback of the girlfriend's testimony occur in the jury room, instead of in open court in the presence of all parties as Florida Rule of Criminal Procedure 3.410(a) requires; (2) unreasonably limiting the defendant's voir dire of potential jurors; (3) sustaining the state's hearsay objection to the girlfriend's allegedly threatening text message, which the defendant argues was not offered for the truth of the matter asserted, but to show the effect on the defendant as the text message's recipient; and (4) failing to instruct the jury that the justifiable use of deadly and non-deadly force instructions applied to lesser-included offenses.

We reverse on the first two arguments. Because the third and fourth arguments may recur in a new trial, we address those arguments as well.

### 1. *Playing Back Testimony in Violation of Rule 3.410(a)*

On the defendant's first argument, the state concedes error, and the parties agree that the remedy for such error is to reverse and remand for a new trial. We agree with the concession of error and the remedy.

Florida Rule of Criminal Procedure 3.410(a) states:

> If, after [the jurors] have retired to consider their verdict, jurors request additional instructions or to have any testimony read or played back to them[,] they may be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read or played back to them. The instructions shall be given and the testimony presented only after notice to the prosecuting attorney and to counsel for the defendant. ***All testimony read or played back must be done in open court in the presence of all parties.*** In its discretion, the court may respond in writing to the inquiry without having the jury brought before the court, provided the parties have received the opportunity to place objections on the record and both the inquiry and response are made part of the record.

(emphasis added).

Despite rule 3.410(a)'s plain language, the trial court, after granting the jurors' request to hear audio playback of the girlfriend's testimony, told the parties it would not be having the testimony played back in open court in the presence of all parties. The trial court stated:

> THE COURT: . . . I'm going to let them listen to it, but we're not going to be here. [The courtroom] is going to be their jury deliberation room. I'm shutting the door. Everyone's leaving. Deputies will be outside. [The jurors] can do what they want, but we're not going to be here sitting in here listening to this testimony.
>
> . . . .

2

[The jurors] can say whatever they want to each other during the playback. I mean, it's done all the time.

. . . .

[I]t's just like sending a tape back to the jury deliberation room that they listen to, when you used to send videos back with TVs that people could actually play other than what we have today. You know, you give them the courtroom, it's the same exact thing. But we don't listen to their deliberations. And you don't get to. And there's no problem with it, there's no issue with it . . . .

Defense counsel objected, arguing that the trial court and the parties should listen to the playback along with the jury in the courtroom. The trial court overruled the defense objection.

When technical difficulties prevented the audio playback from being played over the courtroom's audio system, the trial court directed court staff to bring a CD of the requested playback to the courtroom, and the jury was returned to the deliberation room. The trial court then left the bench. When court staff brought the CD to the courtroom, the trial court did not return to the bench. Instead, the trial court's judicial assistant came into the courtroom, and the following exchange occurred:

JUDICIAL ASSISTANT: [The trial court] said to go ahead and put [the CD] back in the jury room and press play.

DEFENSE COUNSEL: Well, we object to that. I think [the trial court is] going to have to come back out.

JUDICIAL ASSISTANT: [The trial court] said she's not coming back out. And you can put your objection on the record.

DEFENSE COUNSEL: . . . [W]e object to the playback being put in the room with the jury, the same as we would object to the playback happening in the courtroom locked with nobody else present . . . .

Defense counsel was correct, and the trial court was mistaken. The trial court's mistake appears to have been based on its confusion regarding a jury's ability to view recorded *evidence* in a closed deliberation room, versus a jury's ability to hear recorded *testimony*, the playback of which

3

"must be done in open court in the presence of all parties" as rule 3.410(a) plainly provides.

Based on the foregoing, the proper remedy is a new trial. *See Bryant v. State*, 656 So. 2d 426, 429 (Fla. 1995) ("[T]he presence of a judge during trial is a *fundamental* right. Thus, the trial court's absence during the readback of testimony without a valid waiver [of the judge's presence by the defendant] constitutes reversible error.") (internal citation and quotation marks omitted); *Maldonado v. State*, 634 So. 2d 661, 662-63 (Fla. 5th DCA 1994) (trial court committed fundamental error when, in response to jury's request to hear testimony of witnesses, court allowed court reporter to read testimony to jury in jury room, outside the presence of the trial court, counsel, and the defendant); *Glee v. State*, 639 So. 2d 1092, 1093 (Fla. 4th DCA 1994) ("[T]his issue is not susceptible to a harmless error test.").

## 2. *Unreasonably Limiting the Defendant's Voir Dire of Jurors*

The trial court's predecessor entered a scheduling order providing that the state and defense would each be allotted forty-five minutes for voir dire examination. The predecessor court added a note stating: "If either side needs additional time, counsel may approach the bench and indicate what important topics and/or questions relating to the juror's qualifications to serve have not been reached and the amount of time desired to accomplish those goals. The Court will then address those request(s)."

Defense counsel filed a written objection, indicating the defense expected to need more time given the charges and the evidence in the case.

At the trial, the trial court asked all of the potential jurors standard biographical questions, as well as group questions regarding the presumption of innocence, the right to remain silent, and their experience and attitudes regarding domestic violence and law enforcement. The trial court followed up if certain answers raised any questions about the potential jurors' ability to follow the law and serve fairly and impartially.

The state followed. The state's voir dire also focused on the potential jurors' experience and attitudes regarding domestic violence. The state also explored the potential jurors' understanding of the legal definitions of premeditation and self-defense. When the courtroom clerk called "time" at the end of the state's forty-five minutes, the trial court, without the prosecutor having first asked for more time, offered to the prosecutor, "If you need a little bit more time, I'll give the Defense more time too." When the prosecutor responded, "just a little bit," the trial court replied, "I'll give

you ten more minutes, is that okay?" The prosecutor responded, "That should be fine." The state concluded its voir dire in the additional ten minutes, which coincided with the end of that day's proceedings.

During defense counsel's allotted fifty-five minute voir dire the following morning, defense counsel efficiently asked potential jurors about a range of topics related to their ability to serve fairly and impartially and follow the law. For example, defense counsel asked individual potential jurors about their personal experiences with domestic violence, which included many potential jurors. Defense counsel asked the potential jurors whether they could set aside their personal experiences to give the defendant a fair trial. Defense counsel also asked potential jurors if they could follow and apply the Stand Your Ground law even if they did not agree with the law. Defense counsel also asked potential jurors if they could treat men and women equally as it relates to self-defense jury instructions, and follow the court's instructions on weighing the credibility of witnesses.

When the courtroom clerk called "time" at the end of defense counsel's fifty-five minutes, the court asked the prosecutor and defense counsel to approach the bench. Defense counsel again objected to the imposed time limit, and articulated the grounds which defense counsel still wanted to cover with the potential jurors. For example, defense counsel stated he had not finished asking jurors about weighing the credibility of witnesses, the presumption of innocence, the burden of proof, and the right to remain silent. Defense counsel also stated he intended to ask jurors about a few other topics specific to this case, including any difficulty viewing photos of the girlfriend's injuries.

The trial court denied the defendant's request for any additional time. The trial court stated, in pertinent part:

> Well, in light of the scheduling order, the Court gave more time . . . additional time to the State as well. . . . I went over all those issues. I understand that [the defense] does have the right to go over [the issues] you've spoken of again, other than just the Court going over them. However, you did choose to use your time in the way that you chose to use it . . . .

After a short recess, the state asked to be heard on the trial court's decision to deny the defendant's request for additional time. The prosecutor remarked, in pertinent part, "[G]iven the case law that we were able to look at, the State just does have an appellate issue or concern with -- now that [defense counsel] has put on the record that he did, if you divide the time between -- ".

5

At that point, the trial court interrupted to conclude the discussion:

> You know what, there's no Constitutional right to this. I understand you have a concern. That is my decision, I've made it. And you know, if you guys want to go to Federal Court, you won't even get voir dire. So let's move on, you guys have made your record.

After the jury was selected, defense counsel renewed its previous objections to not being given more time to question potential jurors.

The defendant argues on appeal that the trial court unreasonably limited the defendant's voir dire of potential jurors.

We agree with the defendant's argument, and conclude that the trial court abused its discretion. *See Thomany v. State*, 252 So. 3d 256, 256-57 (Fla. 4th DCA 2018) ("We review a trial court's imposition of time limits on voir dire for an abuse of discretion.") (citation omitted).

In reaching this conclusion, we note four observations.

First, unlike in *Thomany*, where defense counsel's voir dire was primarily intended to plant seeds in the potential jurors' minds about the defendant's theory of the case, without asking questions reasonably intended to elicit useful information for potential cause challenges or peremptory strikes, *id.* at 257, here defense counsel's voir dire was primarily intended to elicit useful information for potential cause challenges or peremptory strikes. In short, defense counsel used the ultimately-allotted fifty-five minutes very wisely.

Second, when the fifty-five minute period expired, defense counsel articulated the grounds which he still wanted to cover with the potential jurors, specifically their understanding of the defendant's constitutional rights. In denying any additional time, the court responded, "I went over all those issues." This was error. *See Mendez v. State*, 898 So. 2d 1141, 1143 (Fla. 5th DCA 2005) ("[A] trial judge cannot question prospective jurors on such crucial areas as the presumption of innocence, the State's burden of proof, and the defendant's right not to testify, and then prevent counsel from further examination under the guise that it would be repetitive."); Fla. R. Crim. P. 3.300(b) ("Counsel for both the state and defendant shall have the right to examine jurors orally on their voir dire. . . . The right of the parties to conduct an examination of each juror orally shall be preserved.").

6

Third, the trial court appears to have based the amount of time which the defendant received solely on the amount of time which the state received. When the state's allotted time expired, the state did not have to ask the trial court for more time – the trial court, on its own volition, offered more time. When the prosecutor accepted the offer, the trial court deferred to the prosecutor as to how much time the prosecutor would need – "I'll give you ten more minutes, *is that okay*?" (emphasis added). Although the trial court gave defense counsel the same ten minutes in advance of defense counsel's voir dire, the trial court did not treat defense counsel the same when the defendant's allotted time expired. Instead, defense counsel had to ask for more time, which the trial court quickly denied. The trial court gave no consideration to the fact that the defendant may have justly needed more time than the state. *See Hopkins v. State*, 223 So. 3d 285, 286 (Fla. 4th DCA 2017) ("[L]imits that do not flex with the circumstances can result in unreasonable curtailment of counsel's efforts to obtain a fair and impartial jury to try the issues in the cause.") (citation and internal quotation marks omitted).

Fourth, the trial court appears to have disregarded the state's attempt to aid the trial court in avoiding this error. After the trial court denied the defendant's request for additional time, the prosecutor interjected, "[G]iven the case law that we were able to look at, the State just does have an appellate issue or concern with -- now that [defense counsel] has put on the record that he did . . . ." The state's concern was well-founded, and the trial court's dismissive response was improper. *See id.* ("Even though trial judges may question prospective jurors, their role in jury selection must not impair counsel's right and duty to question the venire.") (citation omitted); *O'Hara v. State*, 642 So. 2d 592, 593-94 (Fla. 4th DCA 1994) ("A trial court abuses its discretion when the imposition of unreasonable time limitations or limitations on the number of questions results in the loss of this fundamental right.").

Based on the foregoing, we conclude that the trial court unreasonably limited the defendant's voir dire of potential jurors. We would have reversed and remanded for a new trial on this argument as well.

We repeat the admonitions which we expressed in *Thomany*: inflexibility in the amount of time provided for voir dire is not a wise path upon which to continue to travel. 252 So. 3d at 257. Any extension of time would have been far less than the many hours which both sides' appellate counsel spent on this appeal, and many days less than the amount of time which will be necessary to try this case again. *Id.*

### 3. *The State's Hearsay Objection to the Girlfriend's Text Message*

At trial, the defendant claimed his girlfriend attacked him, and he acted in self-defense. To support this claim, the defendant sought to introduce into evidence three allegedly threatening texts which the girlfriend sent him before the incident. The state objected to the text messages as hearsay. The defendant responded that the texts were offered to show the effect which the texts had on his state of mind at the time of the incident.

The trial court overruled the state's objection to the first two texts. The first text, sent two months before the incident, read, in pertinent part, "BELIEVE IN US LIKE YOUR LIFE DEPENDS ON IT." The second text, sent forty-eight hours before the incident, read, in pertinent part, "Will NOT BE YOUR B**** NOT ONE MORE DAY . . . You have taken your keys for the last time."

The trial court sustained the state's objection to the third text. The third text, also sent forty-eight hours before the incident, read, in pertinent part, "b****** usually gut n***** with the deepest pockets, my stupid (unintelligible) tried to fall in love." The trial court did not explain its reasoning for having excluded the third text, other than asking, "How is that a threat?"

The defendant argues that the trial court erred in excluding the third text as hearsay when the defendant offered the third text to show its impact on him and not for the truth of the matter asserted. The defendant adds that the third text's impact on him was relevant to his self-defense claim, and was very significant because of its close proximity in time to the incident. According to the defendant, this statement was just as admissible for the same purpose as the first two texts which the trial court admitted, yet the trial court excluded the third text.

The state responds that the defendant failed to make a sufficient proffer of this argument, or in the alternative the error was harmless beyond a reasonable doubt. In other words, the state does not argue that the trial court correctly excluded the third text as hearsay.

We review the trial court's decision to exclude the third text as hearsay for an abuse of discretion, limited by the rules of evidence. *See Allen v. State,* 137 So. 3d 946, 956 (Fla. 2013) (on a hearsay issue, an appellate court "reviews a trial court's decision to admit evidence under an abuse of discretion standard. The trial court's discretion is not unfettered, but is limited by the rules of evidence.") (internal citations and quotation marks omitted).

8

We agree with the defendant that the trial court erred in excluding the third text as hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2018). The defendant offered the third text not to prove the truth of the matter asserted, but for its effect on him as the recipient. *See Eugene v. State*, 53 So. 3d 1104, 1109 (Fla. 4th DCA 2011) ("[T]he emails were not hearsay because they were offered not for the truth of the matters they contained but to establish the effect that the statements had on [the defendant], the recipient of the emails.").

Even if the trial court did not understand the third text to be a threat, that was a question for the jury, not the trial court, in determining the credibility of the defendant's self-defense claim. *See Jenkins v. State*, 189 So. 3d 866, 870 (Fla. 4th DCA 2015) (where defendant's testimony about what he was told should have admitted to show the effect on the listener, "[i]t was for the jury to decide if [the defendant's] testimony was credible").

However, we would not have reversed based on this error. The trial court admitted the two other texts as well as other evidence by which the defendant sought to support his self-defense claim. Thus, this error does not appear to have contributed to the verdict. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) ("The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."). We point out this error to provide guidance in the event that, at the new trial, the defendant again seeks to offer the third text for its effect on him as the listener.

### 4. *Instructing that Justifiable Use of Force Applied to Lessers*

The defendant's final argument on appeal is that the trial court fundamentally erred in not instructing the jury that the justifiable use of deadly and non-deadly force instructions applied not only to the crimes charged, but to also to any lesser-included offenses. In the alternative, the defendant argues that ineffective assistance of counsel is apparent on the face of the record based on defense counsel's failure to object to this error.

The state responds that no fundamental error occurred, and defense counsel was not ineffective on the face of the record.

We agree with the state. The trial court read the justifiable use of deadly and non-deadly force instructions after reading the instructions outlining the elements of the charges and their lesser-included offenses. Further, during closing argument, defense counsel was clear in arguing that self-defense, as outlined in the justifiable use of deadly and non-force instructions, was a defense to all of the state's allegations. *Cf. Sims v. State*, 140 So. 3d 1000, 1004 (Fla. 1st DCA 2014) (in considering the effect of an erroneous instruction under the fundamental error analysis, the court reviews the instruction in the context of the other instructions given, the evidence adduced in the case, and counsel's arguments).

However, while no fundamental error occurred, and defense counsel was not ineffective on the face of the record, we would otherwise conclude it was error that the justifiable use of force instructions did not mention that they applied to the lesser-included offenses of aggravated battery and simple battery, because evidence existed to support such instructions. *See Michel v. State*, 989 So. 2d 679, 681 (Fla. 4th DCA 2008) (defendant was entitled to a jury instruction on the justifiable use of deadly and non-deadly force as a defense to battery, as a lesser included offense of aggravated battery, where the evidence presented supported such instructions); *Simon v. State*, 589 So. 2d 381, 382 (Fla. 4th DCA 1991) (defendant was entitled to a jury instruction on the justifiable use of non-deadly force as a defense to battery on a police officer, as a lesser included offense of attempted first degree murder, where evidence existed to support that instruction).

Consistent with our conclusion, the Florida Supreme Court has since modified the standard jury instructions on justifiable use of deadly force and non-deadly force to begin with the statement that "It is a defense to the crime[s] of (name[s] of relevant crime[s], *including lesser-included offenses*) . . . ." *See In re: Standard Jury Instructions in Criminal Cases*, 257 So. 3d 908, 910-11 (Fla. 2018) (approving proposed amendments to Fla. Stand. Jury Instr. (Crim.) 3.6(f) and (g)) (emphasis added).

We merely point out this error and the change in the standard jury instructions to provide guidance in the event that, at the new trial on the aggravated battery charge, the defendant again seeks to argue that the justifiable use of deadly and non-deadly force instructions apply to the lesser included offense of simple battery.

## *<u>Conclusion</u>*

Based on the foregoing, we reverse and remand for a new trial on what has become, as a result of the jury's verdict in the underlying trial, count one aggravated battery, and counts two and three for simple battery.

*Reversed and remanded for new trial.*

WARNER and GROSS, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***

11