679 So.2d 1168 (1996)
Phillip CAMPBELL, Petitioner,
v.
STATE of Florida, Respondent.
No. 86650.
Supreme Court of Florida.
September 19, 1996.
*1169 Wm. J. Sheppard and Richard W. Smith of Sheppard and White, P.A., Jacksonville, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Stephen R. White, Assistant Attorney General, Tallahassee, for Respondent.
Enoch J. Whitney, General Counsel and Judson M. Chapman, Assistant General Counsel, Tallahassee, for Department of Highway Safety and Motor Vehicles, amicus curiae.
George Aylesworth, Miami, for the Florida Police Chiefs Association, amicus curiae.
Maury Kolchakian, General Counsel and Electra Theodorides, Deputy General Counsel, Tallahassee, for the Florida Sheriffs Association, amicus curiae.
PER CURIAM.
We have for review Campbell v. State, 667 So.2d 279 (Fla. 1st DCA 1995), which expressly and directly conflicts with State v. Jones, 483 So.2d 433 (Fla.1986), and Hartsfield v. State, 629 So.2d 1020 (Fla. 4th DCA 1993), on the issue of whether advance written guidelines are required before the police may conduct a roadblock. We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution. For the reasons expressed below, we quash Campbell and approve Hartsfield.

FACTS and PROCEEDINGS BELOW
On Friday, May 7, 1993, the Jacksonville Sheriff's Office set up a roadblock to check for traffic and safety violations by motorists. The roadblock was established in response to area residents' complaints about speeding and upon the report of an accident that had occurred the previous weekend. To establish the roadblock, officers prepared a Directed Patrol Worksheet which described the deployment strategy: "Stop motorists on Mandarin Rd. for a traffic safety check. Have a motorcycle w/radar on each end of check to monitor speed." This constituted the only written instructions for implementing the roadblock. However, the officer in charge of the deployment, Lieutenant Steve Weintraub, gave field officers oral instructions. Those instructions informed the officers that the plan of the deployment was to stop each car passing through the roadblock. An officer was to then immediately explain to the driver the purpose of the roadblock, inspect the driver's license, and conduct a visual safety check. Any driver who did not have a driver's license, or for whom a citation would have to be written for any other reason, would be diverted into a nearby parking lot.
The roadblock was set up on a three-quarter mile segment of a two-lane road between two curves in the 11800 block of Mandarin Road, a residential area. The officers were in uniform and equipped with safety vests and flashlights with lighted cones. Six large signs alerted motorists to prepare to stop. Lieutenant Weintraub testified that if no violations were observed, the stop would take less than sixty seconds. Radar units were used at both ends of the roadblock. The sheriff's office conducted the roadblock for five hours. Ninety-two citations were issued including forty-nine speeding tickets, nine misdemeanor traffic arrests and the single felony drug arrest involved in this case. On several occasions during the five-hour deployment, the traffic back-up caused a safety concern. Accordingly, the officers exercised their discretion and "a quantity of cars would have been waved through, and at that point we would have been back to stopping every car again."

Campbell's Stop
Petitioner Phillip Campbell was stopped at around 6 p.m. After an officer discovered that Campbell had a suspended license, Campbell was transported to the county jail where officers searched him and found powder cocaine and marijuana in his sock. Campbell moved to suppress the contraband seized from him and contended that the police *1170 roadblock constituted an unlawful seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution, and contrary to our holding in Jones. At the hearing on the motion to suppress, the State relied on a police standard operational order to satisfy any Fourth Amendment concerns. When his motion to suppress was denied, Campbell entered a plea of no contest to drug possession charges, reserving the right to appeal the denial of the motion to suppress. The First District, in a split vote, affirmed Campbell's conviction and upheld the legality of the roadblock.

LAW and ANALYSIS
In State v. Jones, 483 So.2d 433 (Fla. 1986), we held that a written set of uniform guidelines must be issued before a roadblock can be utilized, id. at 438, and reasoned:
Paramount among all other considerations, the fourth amendment requires that all seizures be based on either: (1) specific evidence of an existing violation; (2) a showing that reasonable legislative or administrative inspection standards are met; or (3) a showing that officers carry out the search pursuant to a plan embodying specific neutral criteria which limit the conduct of the individual officers. Because DUI roadblocks involve seizures made without any articulable suspicion of illegal activity, most states examining this issue have ruled that such roadblocks stand or fall based on some set of neutral criteria governing the officers in the field. Courts requiring such a neutral plan do so out of a fear that unbridled discretion in the field invites abuse. We agree and find that it is essential that a written set of uniform guidelines be issued before a roadblock can be utilized.

Id. (citations omitted) (emphasis added). We then discussed the particulars of the written guidelines:
Written guidelines should cover in detail the procedures which field officers are to follow at the roadblock. Ideally, these guidelines should set out with reasonable specificity procedures regarding the selection of vehicles, detention techniques, duty assignments, and the disposition of vehicles. Of course, if the guidelines fail to cover each of these matters they need not necessarily fail. Rather, courts should view each set of guidelines as a whole when determining the plan's sufficiency.
Id. (citations omitted).[1] The district court found that the dictates of Jones were satisfied in this case and, even if they were not, Jones is no longer viable. We disagree. While we reaffirm the view expressed in Jones that the courts "should view each set of guidelines as a whole when determining the plan's sufficiency," the problem here is that there really was no "set of guidelines" as contemplated in Jones.
The issue presented in this case is whether a police roadblock violates a citizen's Fourth Amendment right to be free from unreasonable searches and seizures when the written guidelines issued prior to the operation of the roadblock fail to specify vehicle selection procedures, duty assignments, detention techniques, and procedures for the disposition of vehicles as set out in Jones. We find that the limited police directives used here do not limit police discretion and fall short of the discretion-limiting written set of uniform guidelines specifically required by us in Jones.
We adopt, as our own, Judge Van Nortwick's analysis on this issue:
With respect to whether the written documentation below complied with the Jones requirements for written guidelines, I must conclude after reviewing the record that the limited written instructions issued to the police officers implementing the roadblock below are clearly insufficient under Jones. Here, the sheriff's office issued an operational order that covered all safety *1171 check deployments generally. The operational order, however, did not contain guidelines restricting the discretion of the field officers, but required that specific, restrictive procedures be adopted in a "directed patrol worksheet" prior to establishing a roadblock. The operational order required that the directed patrol worksheet set forth various detailed procedures....
Obviously, the operational order intended the directed patrol worksheet to be prepared with an eye towards compliance with State v. Jones, since it requires that the worksheet's written procedures to "eliminate discretion of the officers in the field." In the present case, however, the very limited instructions spelled out in the directed patrol worksheet fail to satisfy not only the express requirements of the sheriff's operational order, but the requirements of State v. Jones as well. The entire text of the instructions governing the roadblock in the instant case are set forth under "strategy" in the directed patrol worksheet, as follows:
Stop motorists on Mandarin Road for a traffic safety check. Have a motorcycle with radar on each end of the check to monitor speed.
Perhaps most critical to the State v. Jones analysis in this case is the fact that the worksheet fails to specify any written vehicle selection procedures to govern the officers in the field. For example, the limited written "strategy" contains no indication whether the officers were to stop all motorists, or only one in three or one in five vehicles, or were to use some other selection criteria. Further, the written instructions set forth no duty assignments, no detention techniques, and no procedures for disposition of vehicles, contrary to the express requirements of State v. Jones, 483 So.2d at 438. Although, as noted by the majority opinion in the present case, the supreme court indicated that the State v. Jones requirements were not inelastic ("... if the guidelines fail to cover each of these matters they need not necessarily fail. Rather, courts should view each set of guidelines as a whole when determining the plan's sufficiency." Id.), the constitutional sufficiency of written procedures should be determined based upon the extent to which the procedures serve as "neutral criteria governing the officers in the field," id., and "minimize the discretion of the field officer." Id. Not only does this directed patrol worksheet contain none of the procedures specified in State v. Jones, but it sets forth no governing procedures whatsoever. Clearly, it cannot be seen as a limitation on police discretion. In addition, although additional oral instructions were given in the field, those instructions were similar to the oral instructions to stop every fifth vehicle found inadequate in State v. Jones, id. at 435.
Campbell, 667 So.2d at 287-88 (Van Nortwick, J., dissenting). The dissent also indicated that the majority's interpretation of Jones conflicts with the holding of the Fourth District in Hartsfield v. State, 629 So.2d 1020 (Fla. 4th DCA 1993). Campbell, 667 So.2d at 288 (Van Nortwick, J., dissenting).
In Hartsfield, the district court, reversing the denial of a motion to suppress in a sobriety roadblock case, held that "[t]he absence of specific written guidelines renders the roadblock operation fatally defective under State v. Jones." Id. at 1021. "Although the majority opinion here attempts to distinguish Hartsfield because the evidence there did not establish that any of the operating procedures used for the roadblock were in written form, to the extent the majority opinion in the present case concludes that the State v. Jones requirement of detailed written guidelines is no longer viable, it nevertheless directly conflicts with Hartsfield." Campbell, at 288. We agree. Hartsfield disapproved a roadblock set up in accordance with police standard operating procedures, but without advance written guidelines. The case at hand is virtually identical.
Here the police sought to substitute a general operating procedure contained in a standard operational order for the detailed written guidelines for a particular roadblock as required by Jones. As noted by Judge Van Nortwick, however, the standard operational *1172 order itself contemplated the issuance of a specific set of written guidelines for a particular roadblock. It is the failure to comply with that mandate that is fatal to the roadblock here. Jones was decided in 1986, many years before this roadblock was established, and the Jones mandate is clear. It is also apparent from the standard operating order here that the police were familiar with Jones, but failed to comply with its directive in this instance.
The requirement of written guidelines is not merely a formality. Rather, it is the method this Court and others have chosen to ensure that the police do not act with unbridled discretion in exercising the power to stop and restrain citizens who have manifested no conduct that would otherwise justify an intrusion on a citizen's liberty. In this country the police are not vested with the general authority to set up "routine" roadblocks at any time or place. Rather, law enforcement was placed on notice by our holding in Jones that the stopping and detaining of a citizen is a serious matter that requires particularized advance planning and direction and strict compliance thereafter.
Accordingly, we find that the limited police directives prepared in this case did not sufficiently circumscribe the field officers' discretion and fell far short of the "written set of uniform guidelines" we required in Jones.

CONCLUSION
We conclude that the documentation used by the police officials, which patently did not comply with the State v. Jones requirement for written guidelines, rendered Campbell's stop fatally defective under the Fourth Amendment and article I, section 12 of the Florida Constitution. We quash the district court decision below and approve the decision in Hartsfield v. State, 629 So.2d 1020 (Fla. 4th DCA 1993).
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Our conclusions in Jones were similar to the views expressed by the United States Supreme Court:

[T]he Fourth Amendment requires that ... the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.
. . . .
... When such a stop is not based on objective criteria, the risk of arbitrary and abusive police practices exceeds tolerable limits.
Brown v. Texas, 443 U.S. 47, 51, 52, 99 S.Ct. 2637, 2640-41, 2641, 61 L.Ed.2d 357 (1979).