711 So.2d 77 (1998)
Robert HARBAUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 97-0298.
District Court of Appeal of Florida, Fourth District.
April 15, 1998.
*78 Alan T. Lipson of Essen, Essen, Susaneck, Canet & Lipson, P.A., Aventura, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
On January 5, 1996, a Fort Lauderdale policeman was shot in the line of duty. While the suspect was still at large, the police set up a perimeter around the general area where the shooting had occurred and around the crime scene itself. The southern boundary of the perimeter was 17th Street from U.S. # 1 east to the intracoastal waterway; the eastern boundary was the intracoastal; the northern boundary was Davie Boulevard from the intracoastal waterway to U.S. # 1; and the western boundary was U.S. #1 from Davie Boulevard to 17th Street.
Deputy Sheriff Steven Casserly responded to assist in maintaining the perimeter around the crime scene. He was positioned at Southeast 16th Court and U.S. # 1, just north of the 17th Street Causeway, inside the outer boundaries of the perimeter. Casserly blocked 16th Court with his police car to prevent traffic from coming onto U.S. # 1. The crime scene was located on U.S. # 1 just north of Casserly's position. Casserly was orally instructed to keep vehicles and pedestrians from entering the crime scene; there were still shell casings and blood on the roadway and the police had not yet completed a crime scene investigation. A police sergeant briefly described the shooting suspect. Casserly assumed he was to be on the lookout for him.
Casserly saw appellant, Robert Harbaugh's vehicle traveling west on 16th Court approaching the intersection of U.S. # 1. The deputy signaled for the car to stop. Upon seeing the deputy, Harbaugh stopped his car. Casserly walked up to the driver's window so he could tell him to turn around. The deputy noticed that Harbaugh's speech was slurred and he detected the odor of an alcoholic beverage. When he asked to see a driver's license, Harbaugh fumbled around before producing it. Casserly called Deputy Andrew Taylor of the sheriff's DUI task force to conduct a DUI investigation.
Ultimately, the state charged Harbaugh with felony driving under the influence in violation of section 316.193(2)(b), Florida Statutes (1995); the information specified three prior DUI convictions from New Jersey. *79 Harbaugh moved to suppress and dismiss, arguing that the initial stop occurred at a roadblock not in compliance with the guidelines required by State v. Jones, 483 So.2d 433 (Fla.1986). The trial judge denied the motion, distinguishing between a roadblock and the crime scene perimeter involved in this case.
The case went to trial before a jury. One of the evidentiary exhibits was a videotape of Harbaugh taken shortly after the stop. As a result of the trial judge's ruling on a motion in limine, portions of the videotape were not shown to the jury. Before the jurors retired to deliberate, the trial judge advised them that since a portion of the videotape had been excluded, the videotape would not be sent back to the jury room with them; if the jury requested to view it again, the trial judge indicated that he would bring them back to the courtroom and follow the same procedure that had been used to show the videotape during trial.
During deliberations, the jury sent out a note asking to see the videotape again. Once the jury came back into the courtroom, one juror asked whether the playback could be paused, so that the jurors could talk among themselves about a particular point, and then be restarted. The trial judge asked the jury to retire to the jury room. The trial judge expressed concern about the jury deliberating in open court. The trial judge decided that since the videotape was in evidence, and would have been sent back to the jury room but for the redacted portions, both the prosecutor and defense counsel could go into the jury room to play the segments of the videotape in evidence; when the jury wanted to discuss some matter, the trial judge instructed that both lawyers were to leave the room. Defense counsel expressed concern that the jury might ask them a question without a court reporter being present. The trial judge said that he would instruct the jury that there could be no conversation of any kind with the lawyers, that all questions had to be addressed to the court, and that the jury could only ask the lawyers to play back desired portions of the videotape. The trial judge then said that after the playback was completed, the two lawyers were to report on the record what had transpired in the jury room. Defense counsel said that he had no problem with that procedure.
When the jurors returned to the courtroom, the trial judge instructed them on the procedure he had devised for viewing the videotape, which included the following:
[T]here are only two things that you can say to the lawyers. One, if you have a desire to see a part again, would you please rewind it, play it again. That's okay. Or, if you want to discuss some aspect of what it is you have seen, you will simply ask the lawyers to excuse you, they will remove themselves from the jury room.
So that you are aware of it, they will be taking the tape with them when they exit. And when you are finished and wish to see further portions of the tape, you will simply ring the buzzer, indicate that you are ready for them to come back, they will come back and we'll continue with that process.
What I cannot permit you to do, and this has to be very clear, is as it's being played, you can't make a comment with regard to anything that you are seeing in their presence, you can't ask them a question. If there is any type of a question that needs to be addressed, it has to be done in the same procedure that we have employed before. You need to write it down and it needs to be addressed to me.
Before the lawyers went into the jury room, the trial judge asked them if there was any objection to his colloquy with the jury. Neither objected. When the lawyers returned from the jury room, defense counsel said that he did not perceive any problems with what had transpired in the jury room.
The jury returned a verdict of guilty on the charge of misdemeanor driving under the influence. Before the jury was discharged, defense counsel renewed an earlier request that the trial judge modify the procedure set forth in State v. Rodriguez, 575 So.2d 1262 (Fla.1991), and allow the jury to decide the factual issue of Harbaugh's prior convictions. The trial judge denied the motion and discharged the jury.
*80 Harbaugh first argues that he was stopped at a roadblock that must comply with the requirements of Campbell v. State, 679 So.2d 1168 (Fla.1996), and Jones, to pass constitutional muster. These cases concerned the propriety of warrantless temporary roadblocks established to catch persons driving while under the influence of alcohol or to check for traffic and safety violations, without any articulable suspicion of illegal activity to justify any stop. Among other things, Campbell and Jones require a written set of guidelines to be issued prior to a roadblock to "ensure that the police do not act with unbridled discretion in exercising the power to stop and restrain citizens who have manifested no conduct that would otherwise justify an intrusion on a citizen's liberty." Campbell, 679 So.2d at 1172. Without written guidelines, there is a risk that some officers, for their own subjective reasons, might extensively detain citizens without any legal basis.
The roadblock in this case was different than that involved in Campbell and Jones. Its purpose was not to ferret out potentially criminal activity inside an automobile or to ensure that a vehicle complied with statutory safety standards. The narrow focus of Deputy Casserly's roadblock was to secure a crime scene so that evidence of a criminal act might not be destroyed. A secondary purpose was to detain any suspect matching the description of the shooter. A brief stop for these reasons required only limited police contact with a person detained and obviated the need for written guidelines to rein in an officer's exercise of discretion to restrain and interrogate citizens. To accomplish these objectives, an officer need only glance in a car and say a few words to the driver. Also, the exigency of this type of situation distinguishes it from a DUI or traffic safety roadblock, which can be planned in detail and in advance. The procedures specified in Campbell and Jones are inapplicable to the roadblock in this case.
The police conduct here at issue is more properly evaluated under the three considerations of the balancing test of Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640-41, 61 L.Ed.2d 357 (1979), that is described in Jones:
As with all warrantless searches and seizures, courts determine the constitutionally of DUI roadblocks by balancing the legitimate government interests involved against the degree of intrustion (sic) on the individual's fourth amendment rights. [Citations omitted]. This balancing test involves three considerations: (1) the gravity of the public concern that the seizure serves; (2) the degree to which the seizure advances the public interest; and (3) the severity of the interference with individual liberty.
Jones, 483 So.2d at 435. The stopping of Harbaugh's automobile was related to the criminal act of the shooting of the police officer. Society has a great interest in the apprehension of those who criminally shoot people. The stop advanced the public interest by preserving the integrity of the crime scene.[1] But for the evidence of Harbaugh's inebriation, the detention would have been minimallong enough for the deputy to tell a driver to turn around. There was no constitutional violation in this aspect of the case.
Harbaugh next contends that the procedure used by the trial judge to play the videotape amounted to fundamental error. We agree. Existing precedent compels the conclusion that a trial judge is required to be present at any aspect of the trial where the lawyers or the parties are in extended contact with the jury, unless the defendant himself makes a sufficient waiver on the record of the judge's presence.
In Bryant v. State, 656 So.2d 426 (Fla. 1995), the trial judge left the courtroom during a readback of testimony, with the agreement of both the prosecutor and the defense attorney. There was no allegation "that anything happened during the read-back that required the judge's presence or caused *81 harm" to the defendant. Id., at 430 (Wells, J., concurring in part, dissenting in part). Nonetheless, the supreme court reversed the defendant's conviction, explaining its holding as follows:
The presence of a judge, who will insure the proper conduct of a trial, is essential to the state and federally guaranteed rights of trial by an impartial jury. Although this right can be waived under some circumstances, such waiver must be "by a fully informed and advised defendant, and not by counsel acting alone." Waiver of the trial judge's presence cannot be implied because of a defendant's failure to make a timely objection. Although defense counsel and the state attorney agreed to the judge's absence in this case, the defendant Bryant did not because he was not consulted about this procedure by his attorney or the trial court. Thus, Bryant did not knowingly, intelligently, and voluntarily waive the trial judge's presence during the readback. As this court explained in [Brown v. State, 538 So.2d 833 (Fla.1989) ], "the presence of a judge during trial is a fundamental right." ([E]mphasis added). Thus, the trial court's absence during the readback of testimony without a valid waiver constitutes reversible error.
Id. at 428-29 (citations and footnote omitted).
Bryant relied heavily on Brown v. State, 538 So.2d 833 (Fla.1989). In that case, the jury requested to see transcripts of witnesses' testimony after the trial judge had left the courthouse. The attorneys consulted with the trial judge by telephone. Counsel and the trial judge agreed that the judge would not return to the courthouse, that the lawyers would tell the jurors that they could not have the transcripts, and that they would have to rely on their memories. The lawyers followed this agreed-upon procedure, the defendant was convicted, and the supreme court reversed, holding that "communications from the jury must be received by the trial judge in person and that the absence of the judge when a communication is received and answered is reversible error." Id. at 836. The court noted that the presence of the trial judge is essential to the guarantee of a trial by an impartial jury under the state and federal constitutions. Id. at 834-35.
The fifth district applied Brown in Maldonado v. State, 634 So.2d 661 (Fla. 5th DCA 1994). There, the jury requested a readback of three witnesses' testimony. Both attorneys and the trial judge agreed to send the court reporter into the jury room, alone, to read the transcript. Even though there was no objection at trial to this procedure, the fifth district found that with no evidence of a waiver by a fully informed and advised defendant, the procedure violated Brown. Id. at 662-63. The supreme court cited Maldonado with approval in Bryant, 656 So.2d at 429.
The state argues that Bryant and Brown are distinguishable because both cases involved readbacks of testimony, a situation controlled by Florida Rule of Criminal Procedure 3.410. That Rule indicates that after the jurors retire to consider their verdict, if they request "to have any testimony read to them they shall be conducted into the courtroom... and the court ... may order the testimony read to them." While the Rule does not explicitly require the judge's presence, Bryant does require the judge to be present during readbacks, absent a valid waiver. The state contends that this case did not involve a readback of testimony, but a playback of a videotape that had been entered in evidence. Such items are properly taken into the jury room under Florida Rule of Criminal Procedure 3.400(a)(4).
This distinction is unavailing, since the latter Rule does not contemplate that the lawyers would be in the jury room with the jurors handling the evidentiary items to which the rule applies. In Brown and McCollum v. State, 74 So.2d 74 (Fla.1954), the supreme court discussed the reasons behind the requirement that the trial judge be present at every stage of the trial. In Brown the defendant claimed on appeal that the prosecutor did most of the talking when the lawyers went into the jury room and that "he told them that he did not want any more questions." Brown, 538 So.2d at 836. As the basis for its ruling, the supreme court wrote:

*82 We do not know what tone of voice this might have been said in, nor do we know the prosecutor's demeanor and manner in dealing with the jury. The prosecutor's statements and conduct, indeed this whole procedure, might well have had a chilling effect on the jury's deliberations. No one can say at this point that the judge's absence did not have a detrimental effect on the jury's deliberations. The possibility of prejudice is so great in this situation that it cannot be tolerated.
Id.
Similarly, in McCollum, the supreme court explained how a rule requiring the trial judge's presence at every stage of a criminal proceeding insured the integrity of the process:
During such absence [of the trial judge] grave errors or abuses of privilege may occur, and this court may be left to the conflicting affidavits of overzealous attorneys or parties in interest to determine what in fact took place ... It avails not to say that error must be affirmatively shown. This is true, but, where the trial court has disabled itself from informing us as to what occurred, how is error to be shown save by affidavit? ... We feel that we should be doing wrong to sanction any such practice. Such a rule, once established, would open the way to dangerous abuses, and break down one of the most valuable safeguards to litigants.
74 So.2d at 77 (quoting Smith v. Sherwood, 95 Wis. 558, 70 N.W. 682, 683 (1897)).
These perceived dangers which justified the holdings in Brown and McCollum are equally applicable to the procedure used in this case. As the supreme court observed in these two cases, there is great potential for abuse when attorneys have extensive contact with the jury outside the presence of the court. There is just as much risk of a compromise in the trial process during the lawyers' playback of a redacted videotape as there is in a court reporter's readback of trial testimony.
We do not see any meaningful distinction between this case and Bryant. Like this case, Bryant did not involve an allegation that any impropriety occurred while the trial judge was absent. There was just as much risk that the trial would be compromised during the court reporter's readback in Bryant as there was during the lawyers' playback of the videotape in this case. The supreme court has adopted a bright line rule requiring the physical presence of the trial judge at all aspects of the trial. The attorneys' playing of the videotape for the jury was a part of the trial at which the trial judge's presence was mandatory.
There is nothing in this record to indicate that the defendant made the "fully informed and advised" waiver contemplated by Brown, and not simply a waiver by counsel acting alone. Brown, 538 So.2d at 835. This issue is not susceptible to a harmless error test. See Bryant; Glee v. State, 639 So.2d 1092 (Fla. 4th DCA 1994); Ferrer v. Manning, 682 So.2d 659 (Fla. 3d DCA 1996).
We address Harbaugh's final point because it may arise on retrial. He contends that he is entitled to have a jury decide the fact issue of whether he has three prior convictions of driving under the influence, which would make him guilty of a third degree felony under section 316.193(2)(b), Florida Statutes (1995). Resolution of this issue requires consideration of Rodriguez, in light of United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), subsequently decided by the United States Supreme Court.
In Rodriguez, the supreme court addressed the method of handling a defendant's prior convictions in the context of a felony DUI trial. The supreme court recognized that due process mandated that the prior convictions be specified in the information, but that preservation of a defendant's presumption of innocence required that the prior convictions not infect the defendant's trial. 575 So.2d at 1265. To balance these competing interests, the supreme court devised a procedure to be used in a felony DUI jury trial. The trial judge first conducts "a jury trial on the elements of the single incident of DUI at issue without allowing the jury to learn of the alleged prior DUI offenses." Id. at 1266. If the jury returns a guilty verdict as to that single DUI incident, then the trial *83 court conducts "a separate proceeding without a jury to determine, in accord with general principles of law, whether the defendant had been convicted of DUI on three or more prior occasions." Id.
The crime at issue in Gaudin was the making of a material false statement in a matter within the jurisdiction of a federal agency, contrary to 18 U.S.C. § 1001. In submitting the case to the jury, the trial judge removed the issue of materiality from the jury's consideration, by instructing them that "the statements charged in the indictment are material statements." Gaudin, 515 U.S. at 508, 115 S.Ct. at 2312. The government conceded that "materiality" was an element of the offense that the government was required to prove to obtain a conviction. The Supreme Court held that the Fifth and Sixth Amendments of the United States Constitution "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Id. at 509, 115 S.Ct. at 2313; see id. at 522-23, 115 S.Ct. at 2319-20. Gaudin affirmed the circuit court's decision reversing the convictions and remanding for a new trial, because of the failure to submit the element of "materiality" to the jury.
For a charge of felony DUI under section 316.193(2)(b), Florida Statutes (1995), it is clear that the existence of three or more prior DUI convictions is an element of the crime. See State v. Woodruff, 676 So.2d 975, 977 (Fla.1996). Where a defendant requests that a jury determine the occurrence of the prior convictions, Gaudin requires that element of the crime to be submitted to the jury. The procedure established in Rodriguez calls for submission of this element to the trial court. 575 So.2d at 1266; see also Standard Jury InstructionsCriminal Cases No. 92-1, 603 So.2d 1175, 1197-98 (Fla.1992) (adopting felony DUI instruction in accord with Rodriguez). Harbaugh's request to have the jury determine the issue of prior convictions did not amount to a waiver of the bifurcated procedure of Rodriguez; the prejudice of having a jury hear of prior convictions would still compromise the presumption of innocence. Expediency should not cause one constitutional right to be sacrificed for another.
However, this court is not free to disregard the binding precedent of the supreme court. See Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973). The supreme court is the appropriate forum for determining whether the procedure set forth in Rodriguez should be revisited. Accordingly, we certify the following question for its consideration:
WHERE A DEFENDANT REQUESTS THAT THE JURY DETERMINE THE EXISTENCE OF PRIOR DUI CONVICTIONS IN A FELONY DUI TRIAL, SHOULD THE BIFURCATED PROCEDURE OF STATE v. RODRIGUEZ, 575 So.2d 1262 (Fla.1991), BE AMENDED IN LIGHT OF UNITED STATES v. GAUDIN, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)?
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GLICKSTEIN and POLEN, JJ., concur.
GROSS, J., concurs specially with opinion.
GROSS, Judge, concurring specially.
I concur with the majority's reversal on the second point only because I find that such a result is required by Bryant v. State, 656 So.2d 426 (Fla.1995), and Brown v. State, 538 So.2d 833 (Fla.1989). But for Bryant, it would seem that harmless error analysis would appropriately apply in this case. However, the supreme court reversed in Bryant even though defense counsel stipulated that the trial judge could absent himself from the court reporter's readback and there was no claim that anything prejudicial to the defendant had occurred while the judge was not present. This court has held that a trial judge's absence from a part of trial, without an adequate waiver, is per se reversible. See Glee v. State, 639 So.2d 1092 (Fla. 4th DCA 1994).
When faced with other types of constitutional errors, the supreme court has receded from a per se reversal approach and adopted a harmless error test. See State v. DiGuilio, 491 So.2d 1129, 1134-35 (Fla.1986); State v. Marshall, 476 So.2d 150 (Fla.1985). Adoption *84 of such a method of review would not do violence to the bright line rule drawn by the supreme court for this area; a harmless error approach would apply only when the defendant did not timely claim that anything improper had occurred during the judge's absence. In the face of any objection, reversal would be required, because the trial judge had disabled himself from creating a proper record for the appellate court. See McCollum v. State, 74 So.2d 74, 77 (Fla.1954). From a practical standpoint, trial judges would still be aware that their presence at all stages of the trial was mandatory and that absenting themselves, even briefly, was high risk conduct that could jeopardize the entire trial on appeal.
In all other respects, I concur with the majority opinion.
NOTES
[1] Because we find the roadblock in this case was authorized to preserve the crime scene, we do not address whether it was permissible on the theory that it was a lawful perimeter set up for the purpose of stopping all persons leaving the perimeter to see if they matched the descriptions of perpetrators of a just committed crime. See Scott v. State, 629 So.2d 238 (Fla. 3d DCA 1993).