STEVENSON, J.
Earnest Jones was driving his truck when he was stopped by City of West Palm Beach traffic officers during a “vehicle safety inspection.” During the stop, a participating narcotics officer noticed marijuana seeds in the rear of the truck. Jones was convicted of possession of cocaine and marijuana. On appeal, he challenges the trial court’s denial of his motion to suppress the contraband. Since the written guidelines for the roadblock were inadequate, we reverse.
On January 11, 2000, the City of West Palm Beach Police Department was conducting a road block for vehicle safety inspections when Jones was stopped by Officer Ferrera. Jones was unable to produce an automobile insurance card or a state registration form for his vehicle. Ferrera then directed Jones to a nearby area where another traffic officer issued Jones citations for no proof of insurance and no proof of registration. While those citations were being written, Agent Kap-per, a member of the narcotics unit, approached Jones’ vehicle and presented what Kapper described as his “spiel”:
*353 I introduce myself as Officer Kapper, West Palm Beach. Do you believe in the war on drugs? Wait for an answer on that. Do you do drugs? Wait for an answer on that. At that time I ask them if there are any drugs in the vehicle, he said no to that. At that time I ask if he would mind if we look into his vehicle. He stated, “do I have to?” I said no you don’t, this is voluntarily. At that time he said no he didn’t want us looking in the vehicle.
While Agent Kapper was speaking to Jones, Emmons, another narcotics agent, looked in the vehicle and noticed, in plain view, numerous marijuana seeds laying on the carpet floor in the extended cab area of the vehicle. Consequently, Emmons conducted a search of the vehicle and discovered the marijuana and cocaine. When Jones was arrested, additional drugs were found on his person.
Jones made a motion to suppress the evidence seized, contending that the operational guidelines issued by the West Palm Beach Police Department for the January 11 roadblock were inadequate. At the hearing on the motion to suppress, Officer Ferrera testified that prior to the road block beginning, all of the participating officers were called into a room and briefed about the procedures. The roadblock was to be used primarily for the purpose of conducting vehicle safety inspections. Ferrera was the contact officer, so he was the one that initially stopped each vehicle. Every vehicle going through the inspection area was to be stopped. Ferrera would look for any type of equipment violation, such as a cracked windshield, or whether the driver had a driver’s license or the automobile’s registration papers. If a violation was detected at this initial stop, Ferrera was to direct the driver to an area where one of the stationed traffic officers would write a citation.
Agent Kapper testified that he also participated in the pre-inspection briefing, where he was advised of what his role and duties would be at the stop. Kapper’s role was to look for any possible narcotics violations in any vehicle. Agent Kapper and other narcotics officers present at the roadblock were to approach vehicles previously diverted to the detention area due to a safety violation. Kapper testified that he had a “certain spiel” when he approached the driver, similar to the one used in questioning Jones. There were, however, no written guidelines telling him how to question the drivers or how to approach the vehicles. Because of the limited number of officers available, not all drivers stopped for a safety violation were questioned about narcotics. Agent Em-mons also testified that he participated in the safety inspection stop held on January 11, 2000, and attended the briefing prior to the stop.
A policy and procedure pamphlet issued by the West Palm Beach Police Department as part of their training manual was introduced into evidence. Officer Ferrera testified that it was passed around and talked about at their briefing. In addition, an operational guidelines and duty sheet was prepared for the January 11 inspection date, and was passed around and discussed at the briefing. The operational guidelines read:
1) NO SAMPLING, ALL CARS TO BE STOPPED.
2) WHEN TRAFFIC DICTATES, CEASE OPERATION.
A. NOTE TIME OF STOP AND RESTART.
3) SPIKES TO BE DEPLOYED ONLY UPON SUPERVISORS DIRECTION.
4) ALL CONTACT, COUNTER, COVER AND TRAFFIC DIRECTION *354 OFFICERS TO WEAR TRAFFIC VEST. ■
5) ALL TRAFFIC IMPOUNDS TO BE TOWED BY KAUFFS.
6) CAT TEAM TO HANDLE ALL CITY IMPOUNDS.
7) ALL REPORTS AND CITATIONS TO BE GIVEN TO SGT. BERNHARDT AT THE CONCLUSION OF THE INSPECTION.
At the conclusion of the hearing, the trial judge issued an order denying the motion to suppress. The order stated in part:
The Court finds that pursuant to Campbell v. State, 679 So.2d 1168 (Fla.1996) and State v. Jones, 483 So.2d 433 (Fla.1986), the State has met the dictates of these cases and that the West Palm Beach Police Department had written procedures in place as well as operational guidelines and safety inspection assignments for the various officers for January 11, 2000.... Accordingly, based on the testimony of the officers and the case law cited which is part of the record, it is
ORDERED AND ADJUDGED that defendant’s Motion To Suppress is denied.
Review of a motion to suppress in Florida is a mixed question of law and fact. See Perez v. State, 620 So.2d 1256 (Fla.1993). The standard of review on appeal for the trial judge’s application of the law to the factual findings is de novo. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Harris v. State, 761 So.2d 1186 (Fla. 4th DCA 2000). Utilizing the appropriate standard of review, we conclude that the written guidelines for the January 11 roadblock failed to meet the legal requirements of Campbell v. State, 679 So.2d 1168 (Fla.1996), and State v. Jones, 483 So.2d 433 (Fla.1986). Therefore, Jones’ motion to suppress should have been granted.
Campbell and Jones require a comprehensive, written set of guidelines be in place prior to a roadblock “to ensure that the police do not act with unbridled discretion in exercising the power to stop and restrain citizens who have manifested no conduct that would otherwise justify an intrusion on a citizen’s liberty.” Campbell, 679 So.2d at 1172.
Written guidelines should cover in detail the procedures which field officers are to follow at the roadblock. Ideally, these guidelines should set out with reasonable specificity procedures regarding the selection of vehicles, detention techniques, duty assignments, and the disposition of vehicles. Of course, if the guidelines fail to cover each of these matters they need not necessarily fail. Rather, courts should view each set of guidelines as a whole when determining the plan’s sufficiency.
Jones, 483 So.2d at 438 (citations omitted).
The written guidelines here fall far short of those recently found sufficient in Rinaldo v. State, 787 So.2d 208 (Fla. 4th DCA 2001). There, “the written guidelines were comprised of the Cooper City Police Department’s ‘Sobriety Checkpoint Standard Operating Procedure,’ which delineated general checkpoint procedures, and the ‘D.U.I. Checkpoint Operational Plan Assignments,’ which addressed conduct of this particular roadblock.” Id. at 211. In Rinaldo,
[T]he guidelines established specific duties and procedures to be followed by officers participating in the roadblock.
The pointman’s job was to count and direct vehicles into the interview area in a nondiscretionary sequence, as provided in the written guidelines,.and as determined by Sergeant Saredy, depending on traffic conditions. The uniformed *355 officers were briefed prior to the checkpoint and provided with a suggested script for questioning the drivers stopped in the roadblock. Once a vehicle was directed into the interview area, the officers were to briefly detain the driver to identify themselves, explain the purpose of the roadblock, and request a driver’s license and registration. They were to also observe the driver and check for signs of impairment, and if no impairment was detected, allow the driver to continue on his or her way. If it appeared to the officer that a driver was under the influence of alcohol, he was to direct the driver to an interview area for further DUI investigation.
Id. at 211-12. This court found that the written instructions, “which focused on procedures to be followed during the initial stop and detention of motorists, were clear and reasonable and did not permit random or arbitrary vehicle stops or allow officers to discriminately target particular persons.” Id. at 212.
Unlike the guidelines in Rinaldo, the written operational guidelines in the instant case fail to meet the requirements set forth in Campbell and Jones. Although the guidelines addressed the important issue of which vehicles would initially be stopped (all), they did not address which cars would be checked for narcotics or the procedures to be used. The pre-roadblock, oral briefing made it clear that the detection of illegal drugs was to be an integral part of this roadblock. The written guidelines, however, neither mentioned nor addressed the presence or duties of the narcotics officers. The failure of the written guidelines to address this aspect of the inspection left the crucial decisions of which drivers would be questioned about drugs and how they would be questioned solely to the discretion of the officers on the scene. The testimony was undisputed that not all drivers were asked about narcotics because of the limited availability of officers. Although the officers and agents were briefed orally about the detention techniques, oral guidelines are not sufficient. See Hartsfield v. State, 629 So.2d 1020, 1021 (Fla. 4th DCA 1993). In addition, a general operating procedure contained in a standard operational order cannot be substituted for the detailed, written guidelines for a particular roadblock. See Campbell, 679 So.2d at 1171-72.
In the instant case, when viewed as a whole, the written guidelines were insufficient and failed to set forth with reasonable specificity the procedures to be employed at the inspection. Accordingly, the order on appeal denying the motion to suppress is reversed.
REVERSED and REMANDED.
STONE, J., and CLARK, NIKKI ANN, Associate Judge, concur.