FULMER, Judge.
Jason Guy challenges the denial of a motion to suppress evidence obtained during a traffic stop. Guy was stopped by members of the Charlotte County Sheriffs Office who were conducting a sobriety checkpoint on Bayshore Drive in Port Charlotte. Guy was arrested for driving on a suspended license as a habitual offender. At the time of his arrest, Guy was on probation for the charge of driving under the influence (DUI) with serious bodily injury. After his motion to suppress was denied, he entered a guilty plea to both the new charge and the violation of probation (which was based on the new charge), reserving the right to appeal the denial of this motion. Because we conclude that the State failed to show that the checkpoint met the legal requirements to pass constitutional muster, we reverse the denial of the motion to suppress.
The Florida cases governing the constitutionality of sobriety checkpoints, also called DUI roadblocks, are State v. Jones, 483 So.2d 438 (Fla.1986), and Campbell v. State, 679 So.2d 1168 (Fla.1996). The supreme court has found it to be “essential that a written set of uniform guidelines be issued before a roadblock can be utilized.” Jones, 483 So.2d at 438. The officers in the field must be governed by a set of neutral criteria so as to minimize the discretion of the field officers. “Written guidelines should cover in detail the procedures which field officers are to follow at the roadblock.” Id. The guidelines should set out procedures regarding (1) the selection of vehicles, (2) detention techniques, (3) duty assignments, and (4) the disposition of vehicles. Id. In Campbell, the court reaffirmed the need for the *79 written guidelines to minimize an officer’s discretion in the field:
The requirement of written guidelines is not merely a formality. Rather, it is the method this Court and others have chosen to ensure that the police do not act with unbridled discretion in exercising the power to stop and restrain citizens who have manifested no conduct that would otherwise justify an intrusion on a citizen’s liberty. In this country the police are not vested with the general authority to set up “routine” roadblocks at any time or place. Rather, law enforcement was placed on notice by our holding in Jones that the stopping and detaining of a citizen is a serious matter that requires particularized advance planning and direction and strict compliance thereafter.
679 So.2d at 1172. In Campbell, the court reaffirmed the view expressed in Jones that “the courts ‘should view each set of guidelines as a whole when determining the plan’s sufficiency.’ ” Id. at 1170.
In the present case, the officers were operating under a set of written guidelines, termed “Operational Plan for Low-Manpower Sobriety Checkpoint.” This plan was entered into evidence at the hearing on the motion to suppress, and it appears to facially satisfy the Jones criteria except as to the vehicle selection procedure. Under the plan, every vehicle was to be checked. However, if a traffic backup occurred, the Event Commander/Checkpoint Supervisor would develop a contingency plan either temporarily closing the checkpoint until the traffic cleared or changing the number of vehicles to be stopped:
Every vehicle will enter a designated checkpoint site. If a traffic back-up occurs that would not facilitate a minimal detainment, a contingency plan of either stopping the checkpoint until traffic does facilitate a minimal detainment or a systemic selection of vehicles to include every X# vehicle will enter the checkpoint [sic].- This will be determined by the Event Commander/Checkpoint Supervisor.
This provision leaves the vehicle selection procedure to the discretion of a field officer to develop a contingency plan on the spot in the event of a traffic backup, which seems a likely event given that the plan calls for every vehicle to be checked. We conclude that the written guidelines’ inclusion of the undeveloped contingency plan runs afoul of the mandate in Jones and Campbell that the vehicle selection procedure be governed by neutral criteria which limits the conduct of individual officers.
The testimony of the officers involved at the checkpoint also indicates that there was not strict compliance with the plan, as required in Campbell. For example, the officers indicated that the duty assignments in the plan were, in fact, “fluid” or subject to change in the field. One officer, the “checkpoint supervisor” and “drug recognition expert,” was called away because he was needed for an evaluation at the jail. This left one sergeant to take over his duties and perform dual roles as the “traffic control officer” and the “checkpoint supervisor.” The roadblock was scheduled for 9:30 to 11:30 p.m. but it was ended early at 11:10 p.m. for lack of manpower, which was foreseeable given the few officers involved and the need for overlapping duty assignments, but which is not a reason recognized by the plan[1] for early termination.
*80 Because the State did not show that the operational plan sufficiently limited the discretion of the officers as to the selection of vehicles and, to a lesser extent, the testimony showed that the officers did not strictly adhere to the written plan, we reverse the order denying the motion to suppress. Because the parties stipulated that the motion was dispositive, we reverse the conviction for driving on a suspended license as a habitual offender and direct the trial court to enter a discharge for that offense. The revocation of probation is also reversed, and the trial court is directed to restore Guy to his former probation, if it has not already expired.
Reversed and remanded with directions.
STRINGER, J., and BEACH, ROBERT E., Associate Senior Judge, Concur.

. The plan provides: "The sobriety checkpoint is scheduled to terminate at a specific hour. Should inclement weather or a significant traffic decrease occur, an earlier conclusion may be warranted. This also must be documented in the log.”